**ATOCHEM, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 84–2–00163.

United States Court of International Trade.

April 26, 1985.

Donohue & Donohue, New York City, John M. Peterson, Kathleen C. Inguaggiato and Margaret R. Polito, New York City, on the application, for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., J. Kevin Horgan, Washington, D.C., on the application, for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Before the Court is plaintiff's application for an award of attorney's fees pursuant to the provisions of the Equal Access to Justice Act of 1980, 28 U.S.C. § 2412(b) (1982). Defendant opposes the application in all its respects.

The underlying controversy pertains to a decision by the Secretary of the Treasury dated May 14, 1979, pursuant to the Anti-

dumping Act of 1921, ch. 14, 42 Stat. 11, 15, *repealed by* Trade Agreements Act of 1979, Pub.L. No. 96–39, § 106, 93 Stat. 144, 193, determining that perchlorethylene from France [1] was being sold in the United States at less than fair value and ordering the assessment of antidumping duties. *See* T.D. 79–149, 13 Cust.Bull. 348 (1979). The dumping finding continued in effect, and on August 31, 1982, plaintiff's corporate predecessor, Chloe Chimie, filed a formal revocation application with the International Trade Administration (ITA) of the Department of Commerce.[2] On November 17, 1982, the ITA published the preliminary results from its periodic review under 19 U.S.C. § 1675(a) (1982) (section 751 review). *See* 47 Fed.Reg. 51,779 (1982). That notice stated that although the firm did not ship perchlorethylene for over 3 years, under the "Department's minimum requirements," 4 years of no shipments was necessary. On April 20, 1983, the ITA published the final results of the section 751 review. *See* 48 Fed.Reg. 16,929 (1983). Revocation was denied because the period of no shipments had not reached 4 years. The notice also stated that it would consider the firm's revocation request in its next administrative review, which the ITA "expect[ed] to complete ... in an expeditious manner."

On August 19, 1983, the ITA published the preliminary results from its next 751 review. *See* 48 Fed.Reg. 37,678 (1983). The notice, in part dubbed "Tentative Determination to Revoke," stated that there had been no perchlorethylene shipments for 4 years and that the other requirements of 19 C.F.R. § 353.54(e) had been satisfied. On February 1, 1984, however, the ITA published the final results of its second 751 review and denied the request for revocation.[3] *See* 49 Fed.Reg. 4,029 (1984). The notice stated it was the ITA's intention to examine plaintiff's exports for the period between May 19, 1983 and August 19, 1983, and to begin immediately the next review.

It is this failure by the ITA to revoke Treasury Decision 79–149 that forms the basis of the present application for attorney's fees. Plaintiff argues that through telephone assurances, ITA policy declarations, prior practice, as well as the August 19, 1983 "Tentative Determination to Revoke," it anticipated the revocation of the dumping finding in the final results of the second 751 review. With this expectation, according to plaintiff, expensive marketing and sales preparations were made, all of which were severally disrupted by the failure to revoke the dumping finding. Plaintiff labels its treatment at the hands of the ITA "unprecedented, discriminatory and unlawful."

Defendant, explaining the agency's actions, states that after the publication of the preliminary results and "Tentative Determination to Revoke" on August 19, 1983, both plaintiff and the domestic petitioners lodged objections. Plaintiff requested that the finding be revoked only as to Atochem—the only known exporter of French perchlorethylene—but not as to any other French producer. Because of these objections, defendant states, the ITA believed that another administrative review

---

**1.** Perchlorethylene is a "clear, water-white liquid at ordinary temperature with a sweet odor and is completely capable of being mixed with most organic liquids." "It is a chlorinated solvent used mainly for drycleaning of clothing, but is also used in other applications such as vapor degreasing of metals." 48 Fed.Reg. 37679 (1983).

**2.** By virtue of Reorganization Plan Number 3 of 1979, 44 Fed.Reg. 68,273 (1979), made effective as of January 2, 1980 by Exec. Order No. 12,188, 45 Fed.Reg. 989 (1980), responsibility for the administration of the antidumping law was transferred from the Treasury Secretary to the Department of Commerce.

Under Commerce Department regulations, an extant dumping finding may be revoked when, in the Secretary's estimation, a showing is made that less than fair value sales have ceased and are not likely to resume. See 19 C.F.R. § 353.54(a), (b), (e) (1984).

**3.** Shortly after publication of the Tentative Determination to Revoke, the ITA requested that plaintiff confirm that no shipments were made through August 19, 1983—the date of publication of the preliminary results. Evidently, the ITA was seeking information pertaining to the interim period between the end of the first 751 review and the publication of the Tentative Determination to Revoke.

was required under 19 C.F.R. § 353.54(f) (1984).[4] Under that regulation, before the Secretary may revoke a dumping finding, it is necessary to prove no sales at less than fair value right up to the date of publication of the Tentative Determination to Revoke. Thus, the ITA stated it would conduct an additional administrative review covering the period from May 19, 1983 until August 19, 1983.[5]

On February 6, 1984, plaintiff filed a civil action in the Court of International Trade seeking a declaration of the unlawfulness of the ITA's actions. On June 18, 1984, plaintiff submitted its brief under Rule 56.1 of the Rules of this Court. On August 7, 1984, after one time extension had been granted, the defendant filed a cross-motion to dismiss this action as moot, citing the imminent revocation of Treasury Decision 79–149. Finally, on August 15, 1984, the ITA published a notice revoking the dumping finding. *See* 49 Fed.Reg. 32,635 (1984).

Plaintiff opposed the motion to dismiss as moot and the matter was set down for a hearing. Immediately preceding oral argument, however, plaintiff and defendant stipulated that the matter was indeed moot. Plaintiff, nevertheless, persists in its attorney's fees application.

## DISCUSSION

A plaintiff seeking to recover attorney's fees against the United States has a two-fold barrier to overcome: the American Rule and the sovereign immunity doctrine.

In contrast to practice before English courts, parties in United States litigation have traditionally borne their own legal fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717–18, 87 S.Ct. 1404, 1406–07, 18 L.Ed.2d 475 (1967). This restriction on fee shifting, the so-called American Rule, is, however, subject to certain statutory and judicially created exceptions. *See, e.g.,* Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b) (1982); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939) (common fund exception).

Plaintiff in the instant matter proceeds under another well-recognized exception to the American Rule: the bad faith exception. This equitable doctrine holds that "attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (footnote omitted).

Plaintiff maintains the ITA, by its actions with respect to the revocation proceedings, displayed an "unjustified, obstinate, and bad faith refusal to accord plaintiff its rights under the antidumping statute and accompanying regulations." Plaintiff's Application for an Award of Attorney's Fees, at 1.

Regarding the traditional sovereign immunity bar, plaintiff points to the Equal Access to Justice Act of 1980, 28 U.S.C. § 2412(b) (1982).[6] That law subjects the

---

**4.** 19 C.F.R. § 353.54(f) provides in part:

> *Final determination.* As soon as possible after publication of a "Notice of Tentative Determination to Revoke or Terminate" the Secretary will determine whether final revocation or termination is warranted.... [T]he Secretary may determine that a final revocation or termination is warranted only if the firm involved provides information showing no sales at less than fair value with respect to the subject merchandise up to the date of publication of the "Notice of Tentative Determination to Revoke or Terminate."

**5.** Defendant has submitted a declaration by the staff attorney assigned to the Commerce Department team responsible for the instant adminis-

trative reviews. The staff attorney declares that the Department has, on occasion, used a "short-cut" procedure in revoking dumping findings. But this shortened procedure was employed only where no objections were lodged against the "Tentative Determination to Revoke." According to the staff attorney, because objections were made in this case Commerce did not use the short-cut method.

**6.** Section 2412(b) reads in part:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to a prevailing party in any civil action brought by or against the United States or any agency and any official

United States to the assessment of legal fees "to the same extent that any other party would be liable under the common law." *Id.*

■ There is no question that an agency's conduct of an administrative proceeding may form the basis of an application to a court under the Equal Access to Justice Act. *See McQuiston v. Marsh,* 707 F.2d 1082, 1086 (9th Cir.1983); Note, *Awards of Attorney's Fees in the Federal Courts,* 56 St. John's L.Rev. 277, 352 & n. 336 (1982). It is also settled that the Act applies to actions in the Court of International Trade. *See Bar Bea Truck Leasing Co. v. United States,* 4 CIT 137 (1982).

The question squarely presented to the Court is whether the circumstances surrounding the ITA's refusal to revoke the dumping finding in the final results of the second 751 review bear the traditional indicators that trigger the bad faith exception. Resolution of that issue rests within the sound discretion of the Court. *See United States v. 2116 Boxes of Boned Beef, Weighing Approximately 154,121 Pounds,* 726 F.2d 1481, 1488 (10th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

A survey of cases in the area demonstrates that the ITA's actions were not of the kind that courts have traditionally deemed vexatious, wanton or oppressive. In *International Union of Petroleum & Industrial Workers v. Western Union Maintenance, Inc.,* 707 F.2d 425 (9th Cir. 1983), the court stated that an "unjustified refusal to abide by an arbitrator's award may equate to an act taken in bad faith, vexatiously or for oppressive reasons." *Id.* at 428. In that case, an arbitrator found in favor of a union and against the employer in a labor dispute involving a layoff. The employer, however, refused to abide by the arbitrator's decision, and the union was forced to petition the district court for confirmation. The Ninth Circuit, after rejecting the employer's contention that "justifiable grounds" existed to ignore the decision, stated that the award set forth "clear legal rights" which the employer was not at liberty to ignore. *Id.* at 429. The same court in another context has characterized the bad faith exception as applicable " 'only in exceptional cases and for dominating reasons of justice.' " *United States v. Standard Oil Co. of California,* 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, *Moore's Federal Practice* ¶ 54. 77[2], at 1709–10 (2d ed. 1972)).

The Second Circuit has indicated that actions taken "entirely without color and ... asserted wantonly for purposes of harassment or delay" constitute bad faith for fee-shifting purposes. *Browning Debentures Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977); *see Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980).

The District of Columbia Circuit, in evaluating a bad faith prosecution of a counterclaim, stated that the "fee-shifting sanction is invocable only for some dominating reason of justice," and that its standards are " 'necessarily stringent.' " *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 180 (D.C.Cir.1980) (per curiam) (quoting *Adams v. Carlson,* 521 F.2d 168, 170 (7th Cir.1975)); *see also Massachusetts Union of Public Housing Tenants v. Pierce,* 577 F.Supp. 1499, 1503–04 (D.D.C.1984);

of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

In addition, 28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984), provides a more liberal standard for awards of attorney's fees against the United States. Under that provision, a prevailing party is entitled to a fee award unless the court finds that the position of the United States was "substantially justified" or that other "special circumstances" exist that would make an award unjust. *Id.* Atochem, however, does not satisfy the qualifications set forth in section 2412(d)(2)(B) and thus cannot avail itself of the more liberal standard.

*Aero Corp. v. Department of the Navy*, 558 F.Supp. 404, 418–19 (D.D.C.1983).

■ It is thus clear that a court should not lightly infer bad faith on the part of a litigant for purposes of attorney's fees awards. In this case, the Court finds that the ITA did not abuse clear legal rights nor engage in wanton, vexatious behavior. Indeed, the ITA, far from acting entirely without color of authority, was within the four corners of a regulatory standard.

Section 353.54 of the Commerce Regulations clearly empowers the Secretary to verify whether no sales at less than fair value have occurred *up to the date of publication of the notice of tentative revocation.* As discussed earlier, the ITA's second 751 review, covering the period between May 1, 1982 through May 18, 1983, resulted in the publication, on August 19, 1983, of the preliminary results including a tentative determination to revoke.

At that juncture, there was clearly a short "interim period" (the time between the end of the previous 751 review and the publication of the tentative determination to revoke), in this case the time between May 19, 1983 and August 19, 1983, wherein the ITA had not investigated whether sales at less than fair value occurred. Section 353.54(f) clearly provides that the "interim period," short though it may be, must be evaluated by the Secretary in the decision to revoke. With that regulatory injunctive in mind, the Secretary may conduct an administrative review of the "interim period."

Plaintiff's only assault on this practice is that other firms (alleged to be similarly situated) have had dumping findings revoked without a separate administrative review of the interim period. As indicated earlier, this "short-cut" method employed by the ITA is a matter of administrative leniency to be used in the discretion of the agency. Though the abridged procedure may have been used in every other similar case, it was not thereby metamorphosized into an entitlement. This Court does not normally compel an exercise of discretion. *See Seaside Realty Corp. v. United States,* 607 F.Supp. 1481, 1483 (1985).

Even assuming, arguendo, that plaintiff should have been accorded the same treatment as other firms that benefited from the short-cut method, the ITA contends plaintiff's procedural posture should be distinguished from that of other firms. Indeed, it appears that the ITA did not waive administrative review of the interim period because plaintiff was not "similarly situated" with other firms that had received the benefit. As mentioned earlier, upon publication of the tentative determination to revoke, plaintiff and the domestic petitioners noted objections to the proposed revocation, maintaining that the dumping finding should be revoked only as to Atochem, the only known French producer of perchlorethylene, rather than as to all such French producers. If the ITA had proceeded to revoke the dumping finding in the face of noted objections, the revocation might have been subject to challenge for failure to comply with 19 C.F.R. 353.54(f). The ITA, therefore, found it inappropriate to revoke the dumping finding absent review of the interim period and strict compliance with the regulation. This is reflected in the affidavit filed by the staff attorney at the ITA who was responsible for conducting the administrative review. Defendant maintains that in the other cases where review of the interim period was waived, no objections were lodged against the tentative determination to revoke.

■ From the discussion above, the Court concludes that the ITA did not act in bad faith, vexatiously, with wantonness or for other oppressive reasons.[7] This is not an exceptional case where clear legal rights were ignored or actions were taken entirely

---

7. Plaintiff has noted that the sole basis for its request for attorney's fees is the behavior of the ITA in conducting the administrative proceed-ings. The Department of Justice and its attorneys have, in plaintiff's words, been "completely professional."

without color of authority; nor do "dominating reasons of justice" exist warranting an award of attorney's fees to plaintiff.[8]

Plaintiff's application for an award of attorney's fees is accordingly denied.

So ordered.

**8.** As noted earlier, on August 15, 1984, the ITA published a notice revoking the dumping finding at issue in this case. Immediately preceeding oral argument on defendant's motion to dismiss this civil action as moot, plaintiff and defendant stipulated that the action was indeed moot. The Court approved the stipulation on March 11, 1985.

Based on this dismissal for mootness, defendant devoted a substantial part of its opposition to the application for attorney's fees to a discussion of why plaintiff was not a "prevailing party" within the meaning of 28 U.S.C. § 2412(b). Because the Court has found an absence of bad faith on the ITA's part, this issue is not essential to the disposition of the application. The Court notes, however, that it is fairly settled that a plaintiff may be a prevailing party where the suit has been rendered moot by virtue of the granting of the requested relief. *See Foster v. Boorstin,* 561 F.2d 340, 342–43 (D.C.Cir.1977) (decided under 1964 Civil Rights Act). A court's inquiry before awarding legal fees, however, should extend into the causal relationship between the chronology of the lawsuit and the granting of the requested relief. This "catalyst" theory, used where it is contended that the filing and prosecution of a lawsuit served as the impetus for the tendering of the requested relief, though not reached in deciding this case, would nevertheless require substantially more evidence than is before the Court at present. A mere chronology of events will not suffice on this issue. *See Nadeau v. Helgmoe,* 581 F.2d 275, 281–82 (1st Cir.1978).