CONSOLIDATED INTERNATIONAL AUTOMOTIVE, INC., Plaintiff,

v.

The UNITED STATES, the United States Department of Commerce, Defendant.

Court No. 91–09–00700.

United States Court of International Trade.

Aug. 14, 1992.

**1008**

Hume & Associates, Robert T. Hume, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Vanessa P. Sciarra, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Robert E. Nielsen, for defendant.

## OPINION

RESTANI, Judge:

 This matter concerns plaintiff's application for attorney's fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1988).[1] Plaintiff, Consolidated International Automotive, Inc., ("Consolidated") charges that the position of defendant, the Department of Commerce ("Commerce") in *Chrome–Plated Lug Nuts from the People's Republic of China*, 56 Fed.Reg. 46,153 (Dep't Comm.1991) (final det.) (*"Final Det."*) was not "substantially justified" within the meaning of the EAJA, 28 U.S.C. § 2412(d)(1)(B) (1988). Consolidated claims that as the "prevailing party" in this case, it is entitled to recover $38,350.00 in attorney's fees and $3,099.50 for other expenses, in accordance with Section 2412(d)(1)(A) of the EAJA and Rule 68 of the Rules of the United States Court of International Trade.

**1.** The EAJA applies to actions in this court. *Atochem v. United States,* 9 CIT 207, 210, 609

## Facts

On November 1, 1990, Consolidated filed an antidumping petition with Commerce and the International Trade Commission concerning chrome-plated lug nuts ("lug nuts") from the People's Republic of China ("PRC"). On April 18, 1991, Commerce issued its preliminary determination in which it found less than fair value sales of lug nuts from the PRC. *Chrome–Plated Lug Nuts from the People's Republic of China,* 56 Fed.Reg. 15,857 (Dep't Comm. 1991). Commerce found that the PRC was a nonmarket economy ("NME") country and that foreign market value ("FMV") should be determined on the basis of the factors of production in a comparable market economy. Utilizing data from Pakistan, Commerce calculated a constructed FMV and ultimately set the dumping margin at 66.49%.

In the final determination, however, Commerce adopted a new methodology for calculating FMV. The analysis was drawn from the preliminary determination in another investigation, *Oscillating Fans and Ceiling Fans from the People's Republic of China,* 56 Fed.Reg. 25,664 (Dep't Comm. 1991) (prelim. det.). It provided for use of home market prices in valuing the factors of production if "inputs purchased in a NME are purchased at market-oriented prices." *Final Det.,* 56 Fed.Reg. at 46,154 (quoting *Oscillating Fans and Ceiling Fans from the People's Republic of China,* 56 Fed.Reg. at 25,667). Applying this methodology, Commerce determined that "the presumption of state control ha[d] been overcome for the steel [and chemicals] purchased for use in the production of chrome-plated lug nuts." *Final Det.,* 56 Fed.Reg. at 46,155. Consequently, Commerce used PRC prices for steel and chemical inputs and the margin dropped from 66.49% to 4.24%.

In response, Consolidated initiated a civil action challenging the final determination. Consolidated alleged that Commerce's methodology was contrary to law and that

F.Supp. 319, 322 (1985).

its failure to provide adequate notice of the changed methodology violated Consolidated's due process rights. Consolidated also filed a draft countervailing duty ("CVD") petition on November 11, 1991, alleging that if Commerce used steel and chemical input prices from state-owned companies as market prices, the CVD law should apply. On December 12, 1991, Consolidated filed the CVD petition, and on January 9, 1992, Commerce initiated an investigation based on the petition. *Chrome–Plated Lug Nuts and Wheel Locks from the PRC*, 57 Fed. Reg. 877 (Dep't Comm.1992).

In the meantime, on November 13, 1991, Commerce had initiated a CVD investigation of fans from the PRC. *Oscillating Fans and Ceiling Fans from the PRC*, 56 Fed.Reg. 57,616 (Dep't Comm.1991). In the initiation notice, Commerce stated that, in recent antidumping determinations involving the PRC, it had adopted a methodology to determine the market orientation of a sector by "analyzing the prices and costs incurred by each producer within that sector." *Id.* at 57,617. Commerce noted, however, that it was reconsidering the appropriateness of its methodology.

On January 24, 1992, the government filed a motion to remand the civil action so that Commerce could reconsider the final determination. On February 4, 1992, Consolidated filed for injunctive relief alleging irreparable harm from Commerce's incorrect deposit rate of 4.24%. On February 21, 1992, the court granted Commerce's motion for remand and denied Consolidated's request for injunctive relief.

On March 20, 1992, Commerce filed the remand determination with the court. In the remand determination, Commerce described the new criteria for determining FMV in cases involving NME countries. Commerce admitted that its prior scope of inquiry had been too narrow and that the

"absence of explicit government involvement in these transactions is not sufficient to warrant the conclusion that the prices for these inputs are market-driven." *Remand Determination* at 3 (Dep't Comm. Mar. 20, 1992). Under the new guidelines, Commerce found that the prices paid for PRC lug nut inputs were not market-determined. *Id.* at 5. Hence, Commerce recalculated FMV using surrogate country prices for the steel and chemical inputs. *Id.* at 8. Thereupon, Commerce increased the dumping margin from 4.24% to 42.42%.

On April 8, 1992, the court dismissed the civil action without prejudice and instructed Commerce to proceed with publication of its new determination. On April 24, 1992, Commerce published an amended final determination and order, with a cash deposit rate of 42.42%. *Chrome–Plated Lug Nuts from the PRC*, 57 Fed.Reg. 15,052 (Dep't Comm.1992) (amendment to final det.).

Consolidated then filed this application for fees and expenses, arguing that it prevailed in its position that the initial final determination was clearly erroneous and without substantial justification.

### Discussion

Under the EAJA, a court must award attorney's fees and expenses to a prevailing party unless the position of the United States was substantially justified or special circumstances make the award unjust. *See* 28 U.S.C. § 2412(d)(1)(A) (1988).[2]

### I. Consolidated Is A Prevailing Party

The first issue is whether Consolidated is a "prevailing party" within the meaning of the EAJA.

Consolidated filed the civil action to challenge Commerce's methodology for determining FMV in the final determination. As noted in the April 8, 1992 judgment, Consolidated later sought dismissal because

---

**2.** 28 U.S.C. § 2412(d)(1)(A) provides, in part: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded ..., incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial re-

view of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
28 U.S.C. § 2412(d)(1)(A) (1988).

Commerce admitted that it had not considered relevant data, and, on remand, increased the dumping margin approximately tenfold. In large part, Consolidated received the relief it sought through the civil action. While Commerce did not reinstate the 66.49% deposit rate, it did raise the rate significantly to 42.42%.

According to *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a plaintiff may be considered a "prevailing party" if she succeeds on any significant issue in the litigation which achieves some of the benefit she sought in bringing suit. *Id.* at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Moreover, the legislative history makes clear that the term " 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990. Indeed, a party may be deemed "prevailing" if she obtains a favorable settlement of her case, if the plaintiff has sought a voluntary dismissal of a groundless complaint, or even if she does not ultimately prevail on all issues. *Id.; see also Naekel v. Department of Transp., Fed. Aviation Admin.*, 884 F.2d 1378 (Fed.Cir.1989) (discharged air traffic controller who prevailed on four out of six issues on appeal was "prevailing party"). Thus, to determine whether a party has "prevailed," a court should look to the substance of the litigation, and not merely to the technical disposition of the case or motion. *Devine v. Sutermeister*, 733 F.2d 892, 898 (Fed.Cir.1984).

Clearly then, a party need not have litigated to final judgment and been awarded the ultimate relief requested in order to be entitled to an award of fees under the EAJA. In this light, the revised margin of 42.42% sufficiently approaches the preliminary rate of 66.49% to establish Consolidated as a "prevailing party." In addition, Commerce's new methodology more closely resembles its preliminary analysis, which favored Consolidated, than its original final determination. The exist-

ence of a dismissal here does not preclude recovery. Indeed, courts have held that a "prevailing party" may exist in cases involving dismissals. *See Green v. Bowen*, 877 F.2d 204 (2d Cir.1989) (claimant awarded benefits following dismissal was "prevailing party"); *see also Devine v. Sutermeister*, 733 F.2d 892 (Fed.Cir.1984) (union awarded attorney's fees as prevailing party though consent decree entered).

In addition, courts have recognized that a plaintiff may be a "prevailing party" within the meaning of EAJA even when the lawsuit is rendered moot. *See Atochem v. United States*, 9 CIT 207, 609 F.Supp. 319 (1985) (plaintiff may be "prevailing party" when requested relief granted and suit rendered moot); *Gotches v. Heckler*, 773 F.2d 108 (7th Cir.1985) (widow whose benefits were cancelled was "prevailing party" where benefits increased significantly after lawsuit was filed), *amended*, 782 F.2d 765 (1985). Thus, even though Consolidated's suit was rendered moot when Commerce amended its final determination, Consolidated is still a "prevailing party."

In short, although the court did not reach the merits of Consolidated's case, case law demonstrates that Consolidated is a "prevailing party" nonetheless.

## II. Commerce Was Substantially Justified In Its Action

The second issue is whether Commerce was substantially justified in its action.

The EAJA permits an award of fees and other expenses to a prevailing party only if the position taken by the United States was not substantially justified. 28 U.S.C. § 2412(d)(1)(A). In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court set forth the standard by which to judge the government's position in EAJA disputes:

> ["substantially justified" does not mean] "justified to a high degree," but rather "justified in substance or in the main"— that is, *justified to a degree that could satisfy a reasonable person.* That is no different from the "reasonable basis both in law and fact" formulation. . . .

487 U.S. at 565, 108 S.Ct. at 2550 (emphasis added).

■ The fact that Consolidated "prevailed" under the EAJA does not mean that it automatically receives an award of fees and expenses. As the Court of Appeals for the Federal Circuit elaborated:

"[T]he EAJA was not intended to be an automatic fee-shifting device in cases where the petitioner prevails.... [S]ubstantial justification is to be decided case-by-case on the basis of the record." ... "The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified."

Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States, 837 F.2d 465, 467 (Fed.Cir.), cert. denied, 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988) (citations omitted); see also Gava v. United States, 699 F.2d 1367 (Fed.Cir.1983) (fact that government lost its case in Court of Claims did not mean that litigating position was not substantially justified).

■ In fact, fees and other expenses are generally awarded only where the government offers "no plausible defense, explanation, or substantiation for its action." Griffin & Dickson v. United States, 21 Cl.Ct. 1, 6–7 (1990); see e.g. Beta Systems, Inc. v. United States, 866 F.2d 1404, 1406 (Fed.Cir.1989) (fees awarded when government provided "no defense or explanation" for its position); McDonald v. Schweiker, 726 F.2d 311, 316 (7th Cir.1983) (government need only show that it had solid basis in law and fact for its position, even if incorrect).

■ Because Commerce has presented an acceptable basis both in law and fact for its actions, Consolidated is not entitled to an award of fees. While Commerce was conducting separate antidumping investigations of lug nuts and fans from the PRC, it was concurrently reevaluating its method for assessing the PRC economy. The source of the problem was that some sectors of the PRC economy were moving towards a market-oriented model. As Commerce attempted to apply a test that would account for such "bubbles of capitalism," it may have made some errors, but none that reveal its actions as unjustified.

When determining FMV, Commerce must make several findings. If Commerce determines that a given country has a NME, it must then decide whether the available data permits it to find FMV under provisions pertaining to market economy countries. 19 U.S.C. § 1677b(c)(1) (1988). Hence, a finding that a country is a NME country does not automatically trigger the NME country analysis for calculating FMV. Rather, Commerce must also find that the available information is insufficient to permit use of the market economy analysis. Commerce wrestled with these provisions and attempted to formulate an analysis by which it could distinguish between market and nonmarket sectors within a NME.

Commerce thought it had developed such an approach in its preliminary determination of PRC fans. 56 Fed.Reg. 25,664. Under the "fans" methodology, if Commerce determined that inputs purchased in a NME were purchased at market-driven prices, such prices could be used to determine FMV. Applying this approach in the PRC lug nuts final determination, Commerce focused on individual transaction prices. It found that "the presumption of state control" had been overcome, and used PRC prices for steel and chemicals. 56 Fed.Reg. at 46,155. This formulation resulted in a deposit rate of 4.24%.

Later, however, Commerce decided that its concentration upon individual transaction prices was too narrow and that it needed a broader perspective. It decided to examine the economic conditions in each industry that supplied raw materials for production of lug nuts. Accordingly, Commerce requested a remand to reconsider its final determination in PRC lug nuts. During the remand period, Commerce developed a new approach which led to a broader analysis of the economic factors affecting the lug nut industry. For example, Commerce examined the extent of the state's purchases of steel, as well as state ownership of steel producers. With this method of analysis, Commerce seemed to be better able to determine whether steel costs and prices were market-driven. The amended final determination led to a depos-

it rate of 42.42%. Although this was a substantial increase from the rate in the original final determination, it does not make Commerce's original approach unjustified, given the factual circumstances.

Courts have held that government agencies may be substantially justified in their actions, even if erroneous, if they are dealing with previously unaddressed issues. *See Luciano*, 837 F.2d at 467 (though antidumping order revoked, Commerce's determination was substantially justified because of "complexity, uniqueness, and newness" of issues); *Devine*, 733 F.2d at 898 (government position substantially justified because issue "one of first impression"). Hence, as the matters confronting Commerce concerning the PRC economy and its lug nut industry were not settled or fixed,[3] and Commerce was making good faith attempts to address them, its actions were substantially justified. Accordingly, plaintiff's application for fees is denied.

---

3. Indeed, in a letter date-stamped September 16, 1991, the Assistant Secretary for Import Administration of Commerce wrote to the President of Consolidated as follows:

Nonmarket economy cases pose extremely complex policy issues which are growing more complicated in light of the rapidly changing political and economic landscapes in those countries. Our decision in your case does contain some firsts.

Memorandum in Support of Plaintiff's Application for Temporary Restraining Order and Order to Show Cause for Preliminary Injunction, Exhibit 1.