fifteen (15) days of the date that the responses or comments are due.

LIBAS, LTD., Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 96–164.
Court No. 95–01–00014.

United States Court of
International Trade.

Oct. 4, 1996.

Law Offices of Elon A. Pollack (Elon A. Pollack and Heather C. Litman); Law Offices of Michael P. Maxwell (Michael P. Maxwell), Los Angeles, CA, of counsel, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert), for defendant.

## OPINION

GOLDBERG, Judge:

This matter is before the Court following trial *de novo*. The case presents two issues. First, it involves whether the United States Customs Service ("Customs") had the statutory authority to subject fabric imported from India to independent tests in order to determine whether it was loomed by hand or by machine after the Indian government had certified it as hand-loomed fabric. Second, it requires the Court to address the proper classification of the fabric. Upon review of the evidence presented at trial, the Court determines that Customs possesses the authority to subject the fabric to independent tests in order to determine the manufacturing process utilized in its manufacture, and that Customs properly classified the fabric as machine-loomed. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

## BACKGROUND

The merchandise consists of 32 bales of cotton fabric imported by Libas that entered the United States in 1994. The fabric was accompanied by a certificate issued by the government of India indicating that the fabric was hand-loomed. Based upon the Indian government's certification, Customs first classified the fabric under subheading 5208.42.10, Harmonized Tariff Schedule of the United States ("HTSUS") as hand-loomed fabric and imposed a tariff of 6% *ad valorem*. Customs then released the merchandise to Libas. Subsequently, Customs requested that Libas redeliver the fabric in order for Customs to perform laboratory tests to verify that the fabric was loomed by hand. After conducting a series of sixteen tests three times, Customs notified Libas that it was reclassifying the merchandise under subheading 5208.42.40, HTSUS, as "other" fabric for machine-loomed fabric and imposed a tariff of 11.4% *ad valorem*. In addition to the higher tariff rate, fabric classified as machine-loomed is subject to a quota restriction and requires a special visa to enter the United States.

Libas filed the present action challenging Customs' classification of the fabric as machine-loomed. Libas contends that cotton fabric imported from India is exclusively regulated by the Agreement Relating to Trade in Textiles and Textile Products between India and the United States of February 6, 1987, Hein's No. KAV 833, *amended by* exchange of notes and letters dated March 4, 1987, March 10, 1987, December 6, 1989 and December 21, 1989 ("U.S.–India Agreement"). Hence, according to Libas, Customs acted beyond its statutory authority when it independently determined that the fabric was hand- or machine-loomed. In the alterna-

tive, Libas contends that even if Customs had the authority to make an independent determination, it incorrectly determined that the fabric was machine-loomed. Instead, Libas contends that Customs should have classified the fabric as hand-loomed under subheading 5208.42.10, HTSUS.

## DISCUSSION

### A. WHETHER CUSTOMS HAD THE STATUTORY AUTHORITY TO RE-CLASSIFY THE FABRIC BASED ON INDEPENDENT LABORATORY TESTS

■ The U.S.–India Agreement creates a quota and visa system to regulate the import of cotton textiles. It provides that India shall operate a certification system to limit its fabric exports and that, in turn, the United States "will admit" Indian fabric imports provided that they are properly certified by the Indian government in accordance with the requirements of Annex F to the agreement. U.S.–India Agreement, cl. 9, Hein's No. KAV 833 at 4611011. Annex F requires the Indian government to certify hand-loomed fabric with a stamp prior to exportation from India. The basis for the determination must be stated on the stamp. U.S.–India Agreement, Annex F, Hein's No. KAV 833 at 4611033. Libas argues that the U.S.–India Agreement requires Customs to accept this stamp as the exclusive basis upon which it must classify the imported fabric. The Court disagrees.

■ The U.S.–India Agreement and the notes and letters amending it were negotiated pursuant to a congressional grant of authority to the President to enter into international trade agreements concerning textiles in 7 U.S.C. § 1854 (1994).[1] The President's authority to negotiate these agreements requires no subsequent congressional ratification and is properly viewed as a broad grant of authority. *American Ass'n of Exporters and Importers v. United States,* 3 Fed.Cir.

(T) 58, 68, 751 F.2d 1239, 1248 (1985) ("In the area of international trade, 'intimately involved in foreign affairs,' 'congressional authorizations of presidential power should be given a broad construction....'") (citations omitted).

■ However, because the Constitution grants Congress alone the power to regulate foreign commerce, U.S. Const. art. I, § 8, cl. 3, Congress can limit any grant of authority in the area of foreign commerce that it has delegated previously to the President. *See United States v. Yoshida International, Inc.,* 63 CCPA 15, 34–36, 526 F.2d 560, 582–83 (1975) (When Congress delegates power to the President to regulate imports under the Trading with the Enemy Act, it does not abdicate its power to regulate foreign commerce; it may recall or limit the delegated emergency power at any time.); *United States v. Guy W. Capps, Inc.,* 204 F.2d 655 (4th Cir.1953), *aff'd on other grounds,* 348 U.S. 296, 75 S.Ct. 326, 99 L.Ed. 329 (1955) (Presidential exchange of letters between United States and Canada regarding exports must comply with regulations prescribed by Congress. The President may not by-pass congressional limitations regulating foreign commerce by entering into an agreement with a foreign country.).

After the 1956 grant of authority to the President in 7 U.S.C. § 1854, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107 (1988). In doing so, Congress adopted the HTSUS as United States law. 19 U.S.C. § 1202 (1994). Portions of the HTSUS speak directly to how Customs is to classify imports of hand-loomed fabric. According to the Additional U.S. Note 4 to chapter 52 of the HTSUS, the term "certified hand-loomed fabrics" means "fabrics made on a hand loom (i.e., a nonpower-driven loom) by a cottage industry and which prior to exportation have been certified by an official

---

1. In relevant portion, 7 U.S.C. § 1854 states:
The President may, whenever he determines such action appropriate, negotiate with representatives of foreign governments in an effort to obtain agreements limiting the export from such countries and the importation into the United States of any agricultural commodity or product manufactured therefrom or textiles or textile products, and the President is authorized to issue regulations governing the entry or withdrawal from warehouse of any such commodity, product, textiles, or textile products to carry out any such agreement.

of a government agency of the country where the fabrics were produced to have been so made." The plain language of Note 4 imposes three requirements to qualify as hand-loomed fabric: (1) it must be actually made on a hand-loom; (2) it must be made by a cottage industry; (3) and it must be stamped as hand-loomed by the exporting country's government prior to exportation.

 Standard rules of statutory construction require this Court to interpret international agreements and statutory authority in harmony if possible. *Chew Heong v. United States,* 112 U.S. 536, 550, 5 S.Ct. 255, 260–61, 28 L.Ed. 770 (1884). Where this is not possible, the subsequent enactments of Congress override both prior international agreements, *Reid v. Covert,* 354 U.S. 1, 18, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957); *Whitney v. Robertson,* 124 U.S. 190, 194, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888); *South African Airways v. Dole,* 817 F.2d 119, 125–26 (D.C.Cir.1987), and prior congressional grants of authority. *Yoshida,* 63 CCPA at 34–36, 526 F.2d at 582–83; *Guy W. Capps,* 204 F.2d 655. Because notes to the HTSUS are enacted by Congress, 19 U.S.C. § 1202, they have the same status as statute. Congress enacted these notes after it had authorized the President to enter into the U.S.–India Agreement. These notes, therefore, override the U.S.–India Agreement to the extent that the two conflict. Accordingly, the Court finds that the HTSUS places additional requirements upon the importation of hand-loomed fabric, but that the HTSUS and the U.S.–India Agreement otherwise do not conflict as these authorities pertain to the present case.

Libas argues that the Indian government's stamping the fabric as hand-loomed is dispositive as to whether the fabric is actually hand-loomed. Libas further contends that Customs' testing the fabric contravened the U.S.–India Agreement. Both arguments lack merit.

Libas misunderstands the purpose of the stamp requirement. The U.S.–India Agreement, and the stamp requirement contained therein, were negotiated as a voluntary export restraint of textiles pursuant to the Arrangement Regarding International Trade in Textiles, December 20, 1973, T.I.A.S. 7840 ("Multifiber Arrangement"). The stamp, along with the visa, regulates the volume of exports at the point of export. *See* Dutiability of Quota Charges, 53 Fed.Reg. 46,626, 46,627 (1988). This arrangement prevents the export of machine-loomed fabric from India to the United States in excess of the quota restriction on machine-loomed fabric. There is no conflict between the U.S.–India Agreement and the HTSUS regarding the responsibility for the stamp. Both specify that it will be provided by the Indian government.

The HTSUS requirement that the fabric must be actually hand-loomed is distinct from the stamp requirement. Unlike the stamp requirement, the HTSUS does not leave verification of the manufacturing process to the exporting government. Rather, Congress granted Customs the statutory authority to verify the nature of imports using, among other methods, laboratory testing. 19 U.S.C. § 1499 (1994). The obligation of the Indian government to stamp exports pursuant to the U.S.–India Agreement in order to limit its fabric exports to the United States does not deprive Customs of its statutory authority to verify the nature of imports entering the United States.

The Court finds that Customs acted pursuant to statutory authority when it attempted to independently determine whether the fabric was loomed by hand or by machine. Under the HTSUS, the Indian government's stamp is only one of three requirements imposed by Congress for Indian fabric to enter the United States as hand-loomed under subheading 5208.42.10, HTSUS. The fabric must also be actually hand-loomed and be made by a cottage industry. Because these other two requirements are properly within Customs' authority to verify, the Court now addresses the second issue: whether Customs properly classified the fabric as machine-loomed.

B. CUSTOMS' CLASSIFICATION OF THE FABRIC AS MACHINE-LOOMED

 Customs' final liquidation classification of the fabric as machine-loomed enjoys a

presumption of correctness. In order to prevail on the merits, the plaintiff must overcome this presumption. 28 U.S.C. § 2639(a)(1) (1994). The presumption pertains not only to Customs' final classification, but also to every subsidiary fact necessary to support its determination. *United States v. New York Merchandise Co., Inc.,* 58 CCPA 53, 58, 435 F.2d 1315, 1318 (1970); *Schott Optical Glass, Inc. v. United States,* 82 Cust. Ct. 11, 15, 468 F.Supp. 1318, 1320, *aff'd* 67 CCPA 32, 612 F.2d 1283 (1979). To determine whether the plaintiff has overcome the presumption, the Court considers whether Customs' classification is correct, both independently and in comparison with the importer's proposed alternative. *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

■ The proper classification of the fabric depends upon whether the fabric was actually produced by hand or by machine. In turn, this determination rests upon whether the laboratory tests utilized by Customs can differentiate between hand-woven fabric and machine-woven fabric, and whether the tests and their results support Customs' classification in light of all other evidence presented at trial. Plaintiff contends that the tests cannot indicate reliable whether fabric is loomed by hand or by machine. Customs contends that these tests are reliable.

Customs analyzed the fabric three separate times, each time subjecting it to sixteen different tests. At trial, Customs' witnesses Mary Carrillo, Textile Analyst at the United States Customs Laboratory, and Desiree Koslin, Adjunct Professor of the Fashion Institute of Technology in New York City, explained the tests and the results. According to these witnesses, the tests showed that the fabric exhibited the kind of uniformity and consistency expected of a machine-loomed fabric. For instance, the tests showed uniformity along both sides of the fabric, an evenness of yarn tension throughout the fabric, and minimal variation in the yarn count per inch. The tests also showed that defects present in the fabric ran throughout the length of the sample. Consistency and repetition in the fabric sample indicate that it was machine-loomed. In contrast, hand-loomed fabrics exhibits less uniformity, evenness and consistency because a human weaver generally cannot regulate his or her movements with the same exactitude of a machine. For instance, the beater, which compacts the threads during the weaving process, must be brought forward with the same amount of force each time in order to create a fabric possessing consistent qualities for the entire skein. A machine loom allows for greater control to ensure consistency.

Of the sixteen tests performed, ten showed a greater likelihood that the fabric was machine-loomed rather than hand-loomed. These include the tension or spacing of selvages, uniformity of selvages, minimal variation in the fabric count, use of complex yarn, width of the fabric, intricateness of the pattern, existence of minimal knots, presence of repeated irregularities, and absence of weft loops. Three of the tests indicated that the fabric was likely to be hand-loomed or were inconclusive. These include absence of a continuance warp or process marks and a low number of yarns per inch. Three of the tests were not applicable to the fabric at issue.

Plaintiff's main witness, Mary Jane Leland, Professor Emeritus at California State University at Long Beach, testified that the results obtained by the laboratory tests are not dispositive of whether fabric is machine- or hand-loomed. Plaintiff's position rests on Professor Leland's testimony that a skilled master weaver can loom fabric by hand with results that cannot be distinguished from those obtained by a machine loom. Professor Leland also testified that she has observed such weavers.

Based upon the testimony presented at trial, the Court finds that Customs' methodology appears to be reasonably calculated to determine whether fabric is loomed by machine or by hand. Both Ms. Carrillo and Professor Leland testified that the tests that Customs utilizes are widely accepted in the textile industry and have been used for years.

In weighing the evidence, the Court further finds that the fabric was machine-loomed. The results of ten out of sixteen tests indicated that the fabric exhibited qualities consistent with machine-loomed fabric.

Although the Court accepts Professor Leland's testimony that a highly skilled weaver can produce results similar to those of a machine, the plaintiff has not presented any evidence that the fabric at issue was produced by such a weaver. Moreover, while the Court also considers the certification stamp of the Indian government, the Court nevertheless may find that the fabric is not hand-loomed based upon a properly applied methodology supported by evidence. *R.J.F. Fabrics, Inc. v. United States,* 11 CIT 185, 190, 657 F.Supp. 1291, 1295 (1987) (papers and invoices regarding country of origin that accompanied shipment are insufficient to overcome presumption of correctness). The Indian government's certification and Professor Leland's testimony are insufficient to overcome the evidence presented at trial by Customs, particularly in light of the statutory presumption of correctness in favor of the defendant under 28 U.S.C. § 2639(a)(1).

## CONCLUSION

Customs acted within its statutory authority to test the fabric imported from India to determine the production method utilized in its manufacture. Based upon these tests, Customs properly classified the merchandise as machine-loomed fabric under subheading 5208.42.40, HTSUS, thereby subjecting it to a higher tariff, and quota and visa requirements.