**Slip Op. 00 - 110**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  RICHARD W. GOLDBERG, JUDGE

|  |  |
|---|---|
| LIBAS, LTD., | |
| Plaintiff, | |
| v. | Court No. 95-01-00014 |
| UNITED STATES, | |
| Defendant. | |

[Upon remand, Customs's test fails to meet the standards of reliability articulated by the Court of Appeals for the Federal Circuit.  The goods shall be reliquidated under HTSUS 5208.42.10.]

Dated: August 29, 2000

Law Offices of Elon A. Pollack (Elon A. Pollack and Eugene P. Sands), for plaintiff.

David W. Ogden, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Bruce N. Stratvert, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Edward Maurer, of counsel, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service; for defendant.

OPINION

**GOLDBERG, Judge:** This classification case involves 32 bales of cotton fabric imported from India into the United States in 1994.  The United States Customs Service ("Customs") tested the fabric according to its "Methodology for the [A]nalysis of Woven Fabric to Determine Whether Fabric had been Power-loomed or Hand-loomed" (Customs's test).  Based on the results, Customs determined the fabric was power-loomed and classified it under subheading 5208.42.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"), dutiable at a rate of 11.4% ad valorem and subject to a quota restriction.

Plaintiff, Libas, Ltd., initiated this action in 1995 to challenge Customs's classification.  Plaintiff argued that the fabric was hand-loomed, and should therefore have been classified under HTSUS 5208.42.10, dutiable at a rate of 6% ad valorem.  Plaintiff also argued that Customs was required to accept the government of India's certification that the fabric was hand-loomed.

The Court held trial in May, 1996.  In its subsequent opinion, Libas Ltd. v. United States, 20 CIT 1215, 944 F. Supp. 938 (1996), aff'd in part and vacated in part,

193 F.3d 1361 (Fed. Cir. 1999) ("Libas II"), the Court

sustained Customs's classification.  First, the Court held

that Customs was not required to accept as dispositive the

government of India's certification that the fabric at issue

was hand-loomed; in the Court's view, Customs acted within its

statutory authority when it independently assessed whether the

fabric at issue was hand-loomed or power-loomed.  See 20 CIT

at 1218, 944 F. Supp. at 941.  Second, based on the evidence

and testimony adduced at trial, the Court determined that the

fabric was properly classified as power-loomed.  See 20 CIT at

1220, 944 F. Supp. at 942.

On appeal, the United States Court of Appeals for

the Federal Circuit ("Federal Circuit") affirmed the Court's

determination that Customs had the authority to independently

assess and reclassify fabric that had been certified as hand-

loomed by the Indian government.  See Libas II, 193 F.3d at

1364.  The Federal Circuit, however, vacated and remanded the

Court's determination that the fabric was power-loomed.  See

id. at 1369.

By statute, Customs's classification of goods is

presumed to be correct.  See 28 U.S.C. § 2639 (1994).  The

presumption applies to every subsidiary fact necessary to

support classification, see Commercial Aluminum Cookware Co.
v. United States, 20 CIT 1007, 1013, 938 F. Supp. 875, 881
(1996), including the "methods of weighing, measuring, and
testing merchandise used by customs officers and the results
obtained" therefrom.   Exxon Corp. v. United States, 462 F.
Supp. 378, 381 (Cust. Ct. 1978) (quoting Consolidated Cork
Corp. v. United States, 54 Cust. Ct. 83 (1965)), aff'd 607
F.2d 985 (C.C.P.A. 1979).   An importer may rebut the
presumption of correctness by "showing that [Customs's]
methods or results are erroneous."   Id. at 382 (quoting same).
"If a Prima facie case is made out, the presumption is
destroyed and the Government has the burden of going forward
with the evidence."   Id. (quoting same).

        In this case, Customs's classification of the fabric
as power-loomed and the test Customs used to arrive at that
determination were both presumed to be correct.   The Federal
Circuit found that Customs's presumption of correctness had
been overcome, however, because "Libas' [sic] argument at
trial against the reliability of [Customs's] test was
sufficient to rebut the statutory presumption of correctness
accorded Customs classifications."   Libas II, 193 F.3d at 1366
n.2.

Given this posture, the Federal Circuit found wanting the Court's determination that Customs's classification was correct.  In the Federal Circuit's view, the Court relied solely on the results of Customs's test, filed as part of the official record, to conclude that the fabric was power-loomed, see id. at 1365, but "did not ascertain whether, or explain why, the Customs test was reliable according to appropriate standards."  Id. at 1367.

To assess the reliability of Customs's test, the Federal Circuit stated that the Court should have employed the standards articulated by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  See Libas II, 193 F.3d at 1366-67.  The Daubert standards are: (1) whether a theory or technique, such as Customs's test, has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate of error; and (4) whether it is generally or widely accepted.  See Daubert, 509 U.S. at 593-94.  Importantly, the Federal Circuit counseled that the Daubert standards bear not only on whether evidence is admissible, but also on how much or how little weight the Court should accord

such evidence.[1]  See Libas II, 193 F.3d at 1366.

In light of the Daubert standard, the Federal Circuit found the record before it "insufficient . . . to make a determination of . . . [the] reliability [of Customs's test] with any confidence," and advised that "[f]urther evidentiary hearings are probably called for." Id. at 1369.  In accordance with those instructions, the Court conducted a hearing to assess the reliability of Customs's test.

At the hearing, defendant failed to establish that its  test satisfied any of the Daubert standards cited by the Federal Circuit.  And while the Daubert factors are not a

---

[1]    The Court makes no judgment as to whether the Federal Circuit's determination that Daubert bears on weight as well as admissibility is limited to cases in which, as here, the Court is  acting as the trier of fact and the evidence at issue is already part of the record.  Cf. Exxon Corp. v. United States, 45 Fed. Cl. 581, 682 n.206 (Fed. Cl. 1999) (internal citations omitted) ("Daubert and Kumho Tire are, of course, concerned with the admissibility of expert opinion testimony under Federal Rule of Evidence 702.  Here at bar, in contrast, we address the sufficiency of expert opinion testimony already in the record . . . However, our application of the Daubert standard of evidentiary reliability is consistent with the 'hard look' doctrine, under which the district courts have a duty to evaluate the reliability of expert opinion testimony, even after such testimony is in the record, in order to determine whether the case should go to the jury.  Here at bar, sitting as the trier of fact, this court thinks that it is clear beyond cavil that the Daubert reliability standard may properly be taken into consideration in evaluating the probative weight of expert opinion testimony already in the record.").

"definitive checklist or test," Daubert, 509 U.S. at 593,
defendant also failed to demonstrate that its test bears any
other indicia of reliability.

According to Daubert, one of the "key question[s]"
the Court should consider is whether a theory or technique
"can be (and has been) tested."  509 U.S. at 593.  Daubert
also directs the Court to "consider the known or potential
rate of error" of a theory or technique.  Id. at 594.  In this
case, defendant's three expert witnesses stated that, in their
opinion, Customs's test was a reliable method for
distinguishing between hand-loomed and power-loomed fabric.
Defendant failed, however, to demonstrate that Customs's test
(1) measures what it purports to, and (2) does so within an
acceptable rate of error.

The Federal Circuit noted

> that the reliability of the test has not
> been established by the obvious and natural
> method of double-blind testing. That would
> involve running the Customs test on fabric,
> the source of which was known in some other
> way, perhaps by direct observation, and
> determining whether testers who themselves
> had no knowledge of whether test samples
> were hand-loomed or power-loomed could
> reliably distinguish power-loomed from hand-
> loomed fabric within a respectable rate of
> error. Testing a methodology in this manner
> would satisfy two of the Daubert factors,
> verification and known error rate, and for

> this reason would enhance confidence in the
> reliability of the test.

Id. at 1368.  When asked by the Court whether Customs's test could be tested in the manner described above, Dr. Irene Good, a specialist in textile and fiber analysis and one of defendant's experts, answered in the affirmative.  Yet, defendant presented no evidence that Customs's test had ever been tested in this manner.

In fact, Dr. Desiree Koslin, one of defendant's experts from the trial proceedings, testified that she had tested Customs's test.  Yet, prior to applying Customs's test to a given piece of fabric, she knew in advance whether that fabric was hand-loomed or power-loomed.  Because she was not "blind" to the correct answer, the Court attaches less weight to Dr. Koslin's testimony that Customs's test is a reliable method for distinguishing between hand-loomed and power-loomed fabrics.[2]  Cf.  Ruffin v. Shaw Indus., Inc., 149 F.3d 294, 300 (4th Cir. 1998) (finding testimony inadmissible because, among other things, examiner was not "blinded" to which mice were

---

[2]    Dr. Koslin also testified that her personal method of examination "dovetails" with Customs's test.  Notably, however, Customs did not offer evidence that Dr. Koslin's methodology has itself been tested for accuracy, i.e. that Dr. Koslin is able to identify, without advance knowledge of the correct result, fabric as hand-loomed or power-loomed within an acceptable rate of error.

control group members and which were experimental).

Moreover, both Dr. Koslin and Ms. Mary Carrillo, Textile Analyst at the United States Customs Laboratory and one of defendant's witnesses at the trial proceedings, testified that Customs's test was 100% foolproof and thus had an error rate of zero. Ms. Carrillo further testified that Customs's test is completely error-free because multiple analysts, each with years of experience and training, apply it to each sample. Ms. Carrillo testified that in her experience, Customs's test has never led to inconclusive results, nor have analysts disagreed as to the origin of a particular fabric.

The Court attaches little weight to Dr. Koslin and Ms. Carrillo's testimony on this point. First, little credence can be accorded the witnesses' belief that Customs's test is foolproof, when the accuracy of Customs's test has never been measured in any scientific way. Second, that Customs analysts never reach different conclusions as to whether fabric is hand-loomed or power-loomed is questionable in light of the same experts' testimony that a number of the criteria in Customs's test are "qualitative" or "subjective." Indeed, Customs analysts must use their judgment to determine

a number of criteria, such as whether cut fringe is "uniform,"
variation between areas is "minimal," yarn is "complex," and
knots are "minimal."  See Def.'s Ex. 1.  For the foregoing
reasons, Customs's test fails to meet Daubert's standards of
testability and error rate.

Under Daubert, "[w]idespread acceptance can be
an[other] important factor in" assessing the reliability of a
theory or technique.  Daubert, 509 U.S. at 594.  In an attempt
to demonstrate such acceptance, defendant offered Exhibit 13,
a "Check-Sheet for Identification of Handloom Items."
Defendant claimed that the "check-sheet" was used by the
Government of India ("GOI") to distinguish between hand-loomed
and power-loomed fabrics.  Another exhibit purported to show
the concordance between the "check-sheet" and Customs's test.
See Def.'s Ex. 1.

Defendant was unable to authenticate the "check-
sheet," however.  Although the words "Government of India
(GOI)" were handwritten at the top of the document, the
government witness testifying at the time, Mr. Richard
Crichton of the U.S. Customs Service, did not know who wrote
them.  The "check-sheet" was also undated and unsigned.  Given
its uncertain lineage and defendant's failure to offer an

affidavit certifying that it was an accurate representation of the actual test used by the GOI, the Court excluded the "check-sheet." See Fed. R. Evid. 901 (requiring authentication or identification).

Aside from its attempt to demonstrate the purported similarities between Customs's test and the GOI's, defendant did not offer evidence to show similarities to any other test. Upon examination, Dr. Koslin testified that countries other than the United States and the GOI, such as France, must distinguish between hand-loomed and power-loomed fabrics, yet defendant did not submit a copy of the test used by any other country. And other than the testimony of Dr. Koslin that the methodology she uses and teaches is based on similar factors, defendant did not offer documentation of a test used by any other entity, such as a museum, auction house, conservation organization, private lab, or the American Society for Testing and Materials. In this way, defendant failed to demonstrate that its test enjoyed widespread acceptance among other countries and organizations concerned with distinguishing between hand-loomed and power-loomed goods.

Finally, defendant failed to show that its test has been published and subjected to peer review. See Daubert, 509

U.S. at 593.  The Supreme Court acknowledged that "[s]ome propositions . . . are . . . of too limited interest to be published," id., and that "[i]t might not be surprising in a particular case . . . that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151 (1999).  It may well be that the community concerned with distinguishing between hand-loomed and power-loomed fabrics is extremely limited.  Nonetheless, the Court comments on this factor because, while not dispositive, "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected."  Daubert, 509 U.S. at 593.

According to Ms. Carrillo, Customs's test has never been published outside of the Customs Technical Bulletin. Further, Ms. Carrillo was not aware of any publication that discussed Customs's test, nor did she believe that it had been the subject of peer review.  While Ms. Carrillo believed that other labs used tests similar to that of Customs, she could not point to peer review or publication of those tests.  And

while Dr. Koslin testified that she had tested Customs's test, she did not publish her results.

The bulk of the evidence presented by defendant at trial focused on the test Customs used to determine that the fabric at issue was power-loomed.  See Libas, 20 CIT at 1218-20, 944 F. Supp. at 942-43.  Upon reconsideration, Customs's test does not meet any of the Daubert factors, nor did defendant point to any other indicia of reliability.  Therefore, the Court now accords the test little weight.  Apart from Customs's test, defendant's experts testified that, in their opinion, the fabric was power-loomed.  Their personal methodologies for determining this, however, have themselves never been tested, have no known error rate, have never been published, and have never been subjected to peer review.  Without reliable evidence, defendant fails to prove that the fabric at issue was power-loomed.

At the original trial, several of plaintiff's witnesses offered compelling testimony that, based on first-hand experience, the fabric at issue was hand-loomed.  Plaintiff's main witness, Mary Jane Leland, Professor Emeritus at California State University at Long Beach, testified that the fabric at issue is typical of fabric produced on a hand-

powered fly shuttle loom in the Madras area of India.

Professor Leland testified that she has observed "skilled

master weaver[s who] can loom fabric by hand with results that

cannot be distinguished from those obtained by a machine

loom."  Libas, 20 CIT at 1220, 944 F. Supp. at 942.  Further,

Mr. S. Ponnuswamy, partner in JLC International ("JLC") of

Madras, India, testified that JLC purchased the fabric at

issue from two master weavers located in Kovur, India.  Mr.

Ponnuswamy testified that he personally observed similar

fabric being hand-loomed in Kovur under the supervision of the

master weavers.

     Because Customs's test does not meet the standards

for reliability, the weight of the evidence now supports the

conclusion that the fabric is hand-loomed.  Accordingly, the

fabric shall be reliquidated under HTSUS 5208.42.10.


                              _____
                                   Richard W. Goldberg
                                   JUDGE
Dated:    August 29, 2000
          New York, New York.