**Slip Op. 03-103**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  RICHARD W. GOLDBERG, SENIOR JUDGE**

LIBAS, LTD.,

            Plaintiff,

        v.                          Court No. 95-00014

UNITED STATES,

            Defendant.

[Upon remand, Plaintiff is awarded attorneys' fees and costs under the Equal Access to Justice Act.]

Dated: August 13, 2003

Law Offices of Elon A. Pollack (Elon A. Pollack and Eugene P. Sands) for plaintiff.

Peter D. Keisler, Assistant Attorney General; John J. Mahon, Acting Attorney in Charge, Bruce N. Stratvert, Attorney, Civil Division, Commercial Litigation Branch, United States Department of Justice; Edward Maurer, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, Of Counsel, for defendant.

**OPINION**

This case concerns Plaintiff Libas, Ltd.'s ("Libas") claim for attorneys' fees and costs from Defendant United States pursuant to 28 U.S.C. §2412(d), the Equal Access to Justice Act ("EAJA").  Libas brought the original action to challenge a United States Customs Service[1] ("Customs") classification of

---

[1]  The United States Customs Service has since become the Bureau of Customs and Border Protection per the Homeland Security Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09

fabric imported by Libas from India.  Familiarity with the history of the original case is presumed.  See Libas, Ltd. v. United States, 24 CIT 893, 118 F. Supp. 2d 1233 (2000), Libas, Ltd. v. United States, 193 F.3d 1361 (Fed. Cir. 1999), Libas, Ltd. v. United States, 20 CIT 1215 (1996).  This Court previously denied Libas's petition for attorneys' fees and other expenses. Order Denying Plaintiff's Application for Attorneys' Fees and Other Expenses under the Equal Access to Justice Act (May 16, 2001).  On January 7, 2003, the Court of Appeals for the Federal Circuit vacated the denial and remanded to this Court for further proceedings.  Libas, Ltd. v. United States, 314 F.3d 1362, 1366 (Fed. Cir. 2003).[2]  Upon remand, the Court holds that the United States was not substantially justified in the classification determination.  Further, Libas is entitled to attorneys' fees, and can recover those fees in excess of the $75 per hour base provided by the EAJA.  However, not all fees and expenses sought by Libas are recoverable.

(Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4, 2003).

[2] Libas's petition for attorneys' fees and costs was unopposed because the Court refused to accept Customs' untimely submission of its brief in opposition to Libas's motion.

### I.   *Customs was not substantially justified in its classification of the fabric*

28 U.S.C. § 2412(d)(1)(A) reads, in part: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was <u>substantially justified</u> or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A) (2000) (emphasis added).  The Supreme Court has defined substantial justification as "justified to a degree that could satisfy a reasonable person."  <u>Pierce v. Underwood</u>, 487 U.S. 552, 566 (1988).  This has been interpreted as requiring the United States to "show that it was *clearly* reasonable in asserting its position . . . in view of the law and the facts."  <u>Gavette v. Office of Personal Management</u>, 808 F.2d 1456, 1467 (Fed. Cir. 1986) (emphasis in original).  Therefore, the burden of proving either substantial justification or special circumstances lies with the United States.  <u>Traveler Trading Co. v. Untied States</u>, 13 CIT 380, 381, 713 F. Supp. 409, 411 (1989) ("Should the government be unable to bear this burden, the court must award fees and expenses.").  In addition, the United States' position must be substantially justified not only in litigation, but at the administrative level as well.  <u>Gavette</u>, 808 F.2d at 1467.

To be substantially justified, the United States' position is not required to be correct, as long as it is reasonably based.

Pierce, 487 U.S. at 566, Consolidated Int'l Automotive, Inc., v. United States, 16 CIT 692, 696, 797 F. Supp. 1007, 1011 (1992). In Consolidated, for example, incorrect calculations of the foreign market value for chrome-plated lug nuts from the People's Republic of China were deemed substantially justified because Commerce was adopting a novel methodology for determining the market value of goods in a non-market economy.  16 CIT at 697, 797 F. Supp. at 1012.  However, when the United States offers "'no plausible defense, explanation, or substantiation for its action,'" its position is not reasonably based.  Consolidated, 16 CIT at 696, 797 F. Supp. at 1011 (quoting Griffin & Dickenson v. United States, 21 Cl.Ct. 1, 6-7 (1990)), see also Beta Systems, Inc. v. United States, 866 F.2d 1404, 1406 (Fed. Cir. 1989) (when "[n]o authority for [its] position is offered by the government . . .", its position is not substantially justified)(quoting Beta Systems, Inc. v. United States, 838 F.2d 1179, 1182 (Fed. Cir. 1988)).

The only authority cited by Customs in the previous Libas case was its own test to distinguish between hand-loomed and power-loomed fabric.  Because of severe deficiencies in Customs' fabric test for distinguishing between hand-loomed and power-loomed fabric, and the flawed procedure it used to arrive at that fabric test, Customs' incorrect categorization of Libas's fabric as power-loomed was not substantially justified.  The test was so

scientifically unsupportable that it was tantamount to offering
no authority at all.  In Daubert v. Merrell Dow Pharmaceuticals,
the Supreme Court set forth certain factors to consider when
determining the reliability of a scientific test: (1) whether the
technique in question has been tested; (2) whether the test has
been published or otherwise evaluated by peers; (3) the tests'
known or potential rate of error; and (4) whether the test has
been generally accepted.  Daubert v. Merrell Dow Pharmaceuticals,
509 U.S. 579, 593-94 (1993).  The previous Libas opinion
delivered by the Court detailed how Customs' testing method
failed to meet any of the Daubert factors.  Libas, 188 F. Supp.
2d. at 1235-1237.

Customs' failure to meet the first Daubert factor, whether
the test itself has been scrutinized, is the most relevant
hindrance to its claim of substantial justification.  In
Consolidated, although no Daubert-like analysis was employed, the
court was sympathetic to the United States' "erroneous"
conclusions because Commerce was dealing with complex,
"previously unaddressed issues."  Consolidated, 16 CIT at 697.
Although there is testimony which indicates that distinguishing
between hand and power-loomed fabric is also troublesome, such
testing is clearly distinguishable from Consolidated.  In
Consolidated, Commerce was trying to determine an inherently
intricate and imprecise figure: the foreign market value of goods

in a non-market economy.  Commerce was aware that a degree of
error was to be expected; their test was one in a series of
attempts by the United States to foster more accurate valuations.

On the other hand, in the instant case, the fabric test can
be effectively scrutinized.  Either the fabric was hand or
machine-woven; the goal is not estimation or approximation as in
Consolidated.  Therefore, although it may not be more reasonable
to expect a more exact testing method than in Consolidated, it is
reasonable to expect an understanding by Customs of the accuracy
of its fabric test.  This could have been achieved through
double-blind testing: evaluating whether examiners, not
previously informed of a sample's composition, could reliably
distinguish hand and machine woven fabric by using Customs'
fabric test.  Instead, Customs' evaluation involved examiners who
already knew of the material's composition, obviously an
inappropriate testing method.  Libas, 24 CIT at 896, 118 F. Supp.
2d at 1236.  Reliance on such a fabric test was unreasonable at
the administrative level.  Customs failed to recognize the
scientific unreliability of using the fabric test without any
type of testing to validate the fabric test.  It was also
unreasonable in litigation because Customs should have been aware
of the Daubert analysis to which any scientific test would be
subjected.

In light of the fact that Customs' fabric test is not in accordance with <u>Daubert</u>, yet another roadblock to Customs' substantially justified argument is Customs' evident failure to appropriately consider the testimony of S. Ponnuswamy and Mary Jane Leland. Ponnuswamy, partner of JLC International of Madras, India, previously testified that JLC purchased the fabric at issue from hand-weavers in Kovur, India, and that he observed similar fabric being hand-woven. <u>Libas</u>, 24 CIT at 898, 118 F. Supp. 2d at 1237. Leland, a Professor Emeritus at California State University at Long Beach, testified that the fabric is "typical of fabric produced on a hand-powered fly shuttle loom in the Madras area of India." <u>Id.</u> The Court of Appeals for the Eighth Circuit has held, "the government's position [cannot] be deemed reasonable in fact when it relied on an isolated part of the evidence and ignored other overwhelming evidence . . . ." <u>Cornelia v. Schweiker</u>, 728 F.2d 978, 984 (8th Cir. 1984), <u>see also</u> <u>John Doe v. United States</u>, 16 Cl.Ct. 412, 420 (1989) ("Absence of thorough familiarity with the facts and the implications of those facts . . . is unreasonable."). Ponnuswamy and Leland's testimony may not have been "overwhelming" in the face of a validated, accurate Customs' fabric test. However, their testimony, along with the inherent weakness of Customs' test, lends itself to the conclusion that Customs was not substantially justified.

## II. Amount of Attorneys' Fees to be Awarded Per Hour

28 U.S.C. § 2412 (d)(1)(D)(2)(A)(ii) (2000) provides that: "attorney fees shall not be awarded in excess of $125 per hour, unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The $125 base, however, was the result of a 1996 amendment to the EAJA; for cases initiated before March 29, 1996, the base award is $75. See Contract with America Advancement Act of 1996, Pub.L. 104-121. Since the original Libas suit was initiated in January of 1996, the lower figure applies to the instant case.

The Supreme Court in Pierce held that ". . . the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just their legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question . . ." Pierce, 487 U.S. at 572. In this case, it is apparent that elevated attorneys' fees are appropriate. Although cases involving customs law are not automatically worthy of elevated attorneys' fees, in this case specialized skills in customs law were necessary for the instant case, and Libas produced affidavits that there was a shortage of

lawyers in the Los Angeles area capable of handling like cases.

Theoretically, any legal practice area can be labeled as a "specialized skill" within the Pierce definition.  However, such an expansive view, "would serve to emasculate the effectiveness of the $75 cap. . ."  Esprit Corp., Inc. v. United States, 15 Cl.Ct. 491, 494 (1988).  Instead, courts have read Pierce as attempting to curtail a broad interpretation.  Cox Construction Co. v. United States, 17 Cl.Ct 29, 36 (1989) (". . . Pierce's choice of 'patent law' as an example of a specialty probably indicates an intent to be more restrictive in its interpretation of 'limited availability of qualified attorneys.").  As such, needing general expertise in a specific field, by itself, is insufficient for an award of attorneys' fees above the $75 base.  See Lozon v. Commissioner of Internal Revenue, 1997 Tax Ct. Memo LEXIS 622, at 16.  Therefore, in the case at hand, although Libas's credentials and expertise are undisputed, that alone will not affect the amount of attorneys' fees.

Beyond simply possessing expertise, "the test seems to be whether the specialized skills are required to competently litigate the case."  Esprit, 15 Cl.Ct. at 494.  If that is the case, attorneys' fees above $75 may be awarded.  Nakamura v. Heinrich, 17 CIT 119, 121 (1993) (attorney's knowledge of customs law, applied in a broker license case, led to additional fees being awarded).  In this case, as in Nakamura, the attorney's

knowledge of customs law was necessary to litigate this case. Therefore, the Court will award fees above the statutory $75 minimum.

Of interest to courts in determining whether to consider higher lawyer's fees is the availability of regional lawyers who can litigate the case at hand. Nakamura v. Heinrich, 17 CIT at 121. ("The Court takes judicial notice of the relatively small Customs bar that practices before this Court. . ."). Libas submitted affidavits of attorneys from the Los Angeles area who stated that the customs bar was very small in that area. Therefore, the Court will award Libas fees of $125 per hour. The Court declines to award the excessive fees claimed by Libas, up to $260 an hour, because those were calculated based on the $125 statutory minimum which does not apply in this case.

### III. Totals Attorneys' Fees and Expenses Awarded

Before proceeding, it is important to note that the burden is on the party seeking fees to detail with a degree of specificity the hours sought, and the activities conducted during those hours. As stated in Esprit, "[a] party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the title expended, the nature and the need for the service, and the reasonable fee to be allowed." Esprit Corp., 15 Cl.Ct. at 494. Failure to meet these minimal standards of specificity may result in a forfeiture of the claim

for additional fees.  See Lozon, 1997 Tax Ct., at \*22 (fees not awarded for hours which there was "no detailed explanation of the services provided . . ."), Bonanza Trucking Corp. v. United States, 11 CIT 436, 443, 664 F. Supp. 1453, 1458 ("When fees are sought at the expense of a losing party in court, no amount of work, or money claimed therefore, is too small to obviate explanation.").

   *A.   Attorneys' fees*

   Section 2412 applies only to "civil actions."  28 U.S.C. § 2412(a)(1).  It is well grounded that attorneys' fees apply only to the proceedings surrounding the action at hand, Gavette, 808 F.2d at 1461, Cox Construction, 17 Cl.Ct at 36.  Thus, fees and expenses that predate the summons and complaint, including those amassed at the administrative level, are not recoverable. Traveler Trading Co., 13 CIT at 385.  Hence, any hours billed before December 30, 1994, the date Libas's administrative protest was denied, shall be excluded from the total award.

   Libas lists two employees, "JS" and "TP," in the invoices regarding billable hours.[3]  Yet the amount of money sought for both is considerably lower that of the other attorneys listed. Furthermore, TP was given research assignments similar to those given to a summer associate or other non-attorneys.  Since the

---

   [3]  Although the rates for JS and TP are quoted for the Court's benefit, only the hourly rate for TP is relevant.  JS accumulated no hours preparing for litigation.

Court has no detailed description is provided for either JS or TP, the Court is left to assume that they are law clerks, summer associates, or some sort of consultants. Since we have no information that establishes any of these employees as members of the bar, they do not fall within the parameters of the $75 minimum. Bonanza, 11 CIT at 444. Courts have come up with several different solutions for dealing with like situations, ranging from (1) awarding the amount paid to the employee by the law firm, (2) awarding the amount that the client was billed, or (3) awarding no payment at all. Id. The situation presented in this case is analogous to Esprit, where fees sought for a consultant were decreased by two thirds, centrally because no description of the consultant's importance to the trial was provided. Therefore, as in Esprit, we grant Libas one third of the requested for fees from TP's services. Esprit, 15 Cl.Ct. at 494.

Three invoices from the Law Offices of Elon A. Pollack to its client, Libas, were presented to the Court to substantiate Libas's claims for attorneys' fees. Invoice #5932 covered attorneys' fees from December 8, 1994, to June 24, 1996. The total hours claimed in Invoice #5932 are 688.29, for a total of $148,767.90 in attorneys' fees. The Court has modified those totals. First, 28.5 hours of pre-litigation work (prior to December 30, 1994) were subtracted from the total, resulting in a

total of 659.79 hours.  Second, instead of the claimed hourly
rates varying from $175 to $250, the hourly rates were all
adjusted to $125.  Therefore, Libas is awarded $82,473.75 for
attorneys' fees under Invoice #5932.

Invoice #4264 covered attorneys' fees from July 8, 1996, to
October 14, 1999, and claimed 521.04 hours for a total bill of
$105,371.98.  The Court subtracted from the total claimed hours
25.5 hours for work on drafting complaints for other cases before
the Court of International Trade, and work on other protests
before Customs.  See, e.g., Invoice #4264, on 4/3/97, "Edit
complaint in case No. 95-10-01320" (claiming attorneys' fees for
work on another case).  Again, adjusting the attorneys' fees
downward to $125, the Court awards Libas $61,942.50 for Invoice
#4264.

Invoice #5934 covered attorneys' fees from December 8, 1999,
to November 17, 2000, and also included $750.00 for an
administrative charge to compile time records.  The total bill
was for 250.50 hours, or $60,591.25.  The Court subtracted eight
hours for work on other matters, such as "Review case files re
Reserve Calendar" on December 17, 1999.  The Court also
subtracted seventeen hours by "tp".  The result is 225.5 attorney
hours, or $28,187.50 in attorneys' fees.  After adding in the
$481.67 for tp's work (17 hours X $85 per hour, reduced by two-
thirds), and the $750.00 for compiling the time records, the

Court awards $29,419.17 in attorneys' fees for Invoice #5934.

　　*B.　　Expenses*

　　"The EAJA permits recovery of all reasonable and necessary expenses incurred or paid in preparation for trial of the specific case before court, which are customarily charged to the client." Traveler Trading Co., 13 CIT at 386.  However, several of the expenses sought by Libas are neither "reasonable" nor "necessary."  First, plaintiff seeks reimbursement for numerous uses of "Federal Express" and messenger services without explaining why those services were necessary.  As other courts have held, we find that costs for Federal Express and messenger services are not reimbursable, without an explanation as to why the United States Postal Service was inadequate.  Lozon, 1997 Tax Ct., at *23.  Second, plaintiff seeks awards for several vaguely described "meals."  The Court does recognize Libas's need for sustenance, however we see no reason to allow remuneration for an expensive palate.  Thus, meals at House of Shish Kabob for $115.00 on June 23, 2000, and Yang Chow Restaurant for $109.16 on June 4, 1996 shall not be remitted.  Additionally, the meal claimed on July 26, 1996, at Brewski's for $33.78 is not permitted because no corresponding attorney hours or other expenses were billed out that date.  The Court cannot attribute that meal as necessary to perform any service for the client.  Perhaps these meals were necessary group meetings; however,

without any detail of the company or of the subject matter discussed, the expenses claimed fail Libas's burden of proof.

Third, plaintiff seeks payment for a stay at Doubletree Hotels on May 30, 1996. Claims for hotel costs, without explanation, have been denied in the past. <u>John Doe</u>, 16 Cl.Ct. at 422. Although this expense took place around the time of trial, we are given no explanation regarding its necessity. Failure to overcome Plaintiff's burden of proof, plus the Court's confusion as to why accommodations were necessary for a locally held trial, supports a denial for additional fees.

Fourth, plaintiff seeks payment for certain expenses incurred prior to December 30, 1994, the date when litigation began for purposes of calculating fees and expenses. Therefore, the Court subtracts $94.67 from the expense invoice. Finally, Libas submitted a supplemental declaration on December 22, 2000, claiming that additional fees for expert witness Mary Jane Leland had been omitted from the original claim for expenses. The amount claimed is $9,563. The Court will grant Libas's petition for the additional fees attributable to Leland. However, because it is not clear if the amount claimed on the supplemental declaration includes previous claims for Leland's services, and to avoid double-counting Leland's fees, the Court will subtract the $2308.35 claimed for Leland's services in the original invoice. Therefore, while all other expenses remain valid, the

Court denies additional fees for charges of Federal Express and messenger services, the three discussed meals, the hotel stay, expenses incurred prior to December 30, 1994, and overlapping witness fees for Leland.

## *IV. Conclusion*

Based on the previous evidence regarding attorneys' fees and expenses, the total awarded to Libas is $199,723.87.

**Richard W. Goldberg**
**Senior Judge**

**DATED:** **August 13, 2003**
**New York, New York**