Slip Op. 08-132

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**JAZZ PHOTO CORPORATION**,

Plaintiff,

v.

**UNITED STATES**,

Defendant.

</td><td>

**Before:  Judge Timothy C. Stanceu**

**Court No. 04-00494**

**PUBLIC**[*]

</td></tr>
</table>

## OPINION AND ORDER

[Granting in part and denying in part plaintiff's application for attorneys' fees and other expenses under the Equal Access to Justice Act]

Dated: December 2, 2008

*Neville Peterson LLP* (*John M. Peterson*, *Curtis W. Knauss*, *George W. Thompson*, *Maria E. Celis*, and *Catherine Chess Chen*) for plaintiff.

*Gregory G. Katsas,* Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Jane C. Dempsey*); *Beth Brotman* and *Paul Pizzeck*, Customs and Border Protection, United States Department of Homeland Security, of counsel, for defendant.

Stanceu, Judge: Before the court is the revised application of Jazz Photo Corporation ("Jazz" or "plaintiff") for attorneys' fees and other expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2000).  In *Jazz Photo Corp. v. United States*, 31 CIT ___, 502 F. Supp. 2d 1277 (2007) ("*Jazz IV*"), the court held that some of the government's positions in litigation before the United States Court of Appeals for the Federal Circuit ("Court of Appeals") in 2005 and 2006 were not substantially justified.  The court allowed plaintiff to

---

[*] With the consent of the parties, this public version is being issued without the redaction of any information contained in the confidential version of this Opinion and Order.

submit a revised EAJA application statement identifying the attorneys' fees and other expenses incurred in litigating certain issues before the Court of Appeals on which Jazz prevailed and on which the government's position was not substantially justified. *See* Revised Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act 28 U.S.C. § 2412(d), Title II of Public Law 96-481, 94 Stat. 2325 and Rule 54.1 ("Revised Application") 2. Upon considering the revised application, the court determines a fee award of $38,704.76 which amount consists of $34,350.51 in compensation for attorneys' fees and $4,354.25 in compensation for disbursements.

## I. BACKGROUND

Plaintiff's EAJA claim arose from litigation involving the admissibility of Jazz's imported merchandise, which consisted of certain "lens-fitted film packages," which are more commonly known as "disposable cameras," "single use cameras," or "one-time use cameras." In its revised EAJA application, plaintiff seeks $123,521.00 for attorneys' fees and $9,297.31 for disbursements. *Id.* Arguing that Jazz's EAJA request fails to comply with the court's order in *Jazz IV*, the government submits that the fee award should be reduced to an amount no greater than $16,773.75 and opposes any reimbursement for other expenses. *See* Def.'s Resp. to Pl.'s Revised Application for Fees and Other Expenses Under the Equal Access to Justice Act 28 U.S.C. § 2412(d), Title II of Public Law 96-481, 94 Stat. 2325 and Rule 54.1 ("Def.'s Resp.") 7-16.

Background information on Jazz's revised EAJA application is presented in the opinion of the Court of Appeals in *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001) ("*Jazz I*"), the opinion of the United States Court of International Trade in *Jazz*

*Photo Corp. v. United States*, 28 CIT 1954, 353 F. Supp. 2d 1327 (2004) ("*Jazz II*"), and the

opinion of the Court of Appeals in *Jazz Photo Corp. v. United States*, 439 F.3d 1344 (Fed. Cir.

2006) ("*Jazz III*"), which affirmed the court's judgment in *Jazz II* and decided the appellate

issues on which Jazz qualifies for an EAJA award.

In *Jazz IV*, the court held that the positions taken by United States Customs and Border

Protection ("Customs") in the administrative proceeding resulting in the *Jazz II* and *Jazz III*

litigation were substantially justified. *Jazz IV*, 31 CIT __, 502 F. Supp. 2d at 1293-94. The court

reached the same conclusion with respect to the government's positions in the *Jazz II* litigation

before the Court of International Trade. *Id.* at __, 502 F. Supp. 2d. at 1284-91. Concerning the

*Jazz III* litigation before the Court of Appeals, the Court of International Trade ruled in *Jazz IV*

that the United States was not substantially justified in pursuing its position on the issue of

permissible repair and also was not substantially justified in pursuing its position on the authority

of the court to order expedited administrative proceedings directing Customs to participate in

segregating the admissible portion of Jazz's imported merchandise from the inadmissible

portion. *Id.* at __, 502 F. Supp. 2d. at 1287-93. At the conclusion of the *Jazz IV* litigation, the

court declined to award fees and other expenses and instead allowed plaintiffs to submit a revised

application statement that identifies the specific legal services provided, and expenses incurred,

in plaintiff's litigation of those two issues before the Court of Appeals. *Id.* at __, 502 F. Supp. 2d

at 1295.

## II. DISCUSSION

If the government pursues a litigation position that is not substantially justified, and if

other conditions set forth in EAJA are satisfied, a court may award a prevailing party "reasonable

attorney fees." 28 U.S.C. § 2412(d)(2)(A). Plaintiff seeks compensation for the fees paid to three partners and two associates of plaintiff's counsel, Neville Peterson LLP. Affirmation of John M. Peterson in Support of Application for Fees under the Equal Access to Justice Act, Aug. 27, 2006 ("Affirmation") ¶ 13. Counsels' hourly rates ranged from $450 for the lead partner to $225 for the most junior associate. *Id.*

In its original EAJA application, plaintiff sought $347,333.00 in attorneys' fees and $34,428.45 in disbursements, totaling $381,761.45, for services rendered from September 30, 2004 through February 8, 2006. Affirmation of John M. Peterson in Support of Application for Fees Under the Equal Access to Justice Act, May 26, 2006, Ex. A at 1. Plaintiff reduced its original EAJA claim by shortening the requested compensation period to eliminate all billing entries and disbursements that preceded the issuance of the *Jazz II* opinion. Affirmation ¶ 13. Plaintiff's revised application seeks compensation for services beginning November 18, 2004 and ending February 8, 2006. *Id.* For a total of 363.1[1] hours of legal services provided in connection with the appellate litigation, plaintiff requests $123,521.00 for legal fees and reimbursement of $9,297.31 in other expenses. *Id.* ¶¶ 16-17.

The government advocates an award for attorneys' fees in an amount not to exceed $16,773.75, which would limit plaintiff's hourly fee to the $125 EAJA rate and exclude 229.56 hours of billing from plaintiff's request. Def.'s Resp. 7-14, 16. In seeking a deduction of 229.56 hours, defendant argues that plaintiff's revised application improperly includes 130.60 hours for

---

[1] In its revised EAJA application, plaintiff requests compensation for 363.75 hours. Affirmation of John M. Peterson in Supp. of Application for Fees under the Equal Access to Justice Act, Aug. 27, 2006 ("Affirmation") ¶ 16. Based on the attorneys' billing statements attached to plaintiff's revised EAJA application, the correct calculation is 363.15 hours.

representation pertaining exclusively to litigation with a third party, 6.8 hours for representation related to *Jazz I*,[2] and 16.5 hours for billing by one of the firm's attorneys, Mr. Thompson, on matters unrelated to the appellate litigation in question. *Id.* at 7-10. The government further alleges, with respect to 97.25 hours, that plaintiff failed to segregate the hours for services rendered on issues for which the court permitted EAJA recovery in *Jazz IV*. *Id.* at 10-12. The government requests that the court deduct 75.66 of the 97.25 hours to account for this error. *Id.* at 13. Although rejecting some of defendant's calculations, the court concludes that certain adjustments to plaintiff's revised EAJA claim are appropriate to ensure that plaintiff does not recover under EAJA legal fees and other expenses related to litigation of issues on which the government's position was substantially justified.

### A. The Special Factor Enhancement Is Warranted for Representation on the Issue of Segregation of Merchandise

EAJA states that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff seeks compensation at rates above the $125 statutory maximum, arguing that higher rates are justified because of the presence of special factors and increases in the cost of living.

---

[2] The billing entries identified by defendant as constituting representation related to *Jazz I* actually account for 7.6 hours of representation, rather than 6.8 hours as defendant alleges. The government argues, incorrectly, that plaintiff's counsel failed to provide the corresponding hours for the billing entry of January 14, 2005. *See* Def.'s Resp. to Pl.'s Revised Application for Fees and Other Expenses Under the Equal Access to Justice Act 28 U.S.C. § 2412(d), Title II of Public Law 96-481, 94 Stat. 2325 and Rule 54.1 ("Def.'s Resp.") 8. The billing entry for that date provides that Mr. Peterson billed 0.8 hours. *See* Affirmation, Ex. A at 7.

Plaintiff contends that a special-factor enhancement is warranted because, in addition to basic litigation skills, plaintiff's attorneys "had to have specialized knowledge in International Trade Commission 337 General Exclusion Orders, intellectual property matters such as first sale and under patent laws, permissible repair, and some expertise in the manner in which Customs is called to execute 337 Orders at the ports of entry." Pl.'s Reply Mem. in Supp. of Its Application for an Award of Attorney's Fees Under the Equal Access to Justice Act ("Pl.'s Reply") 12. Plaintiff also argues that "the attorneys at Neville Peterson LLP presented all these skills" on an emergent trial schedule and that "no other law firm or attorney would take on such an expedited trial (which was the first of its kind, and which involved almost entirely issues of first impression) and appeal schedule for a client which was already under bankruptcy protection." Pl.'s Reply 8, 13. The government argues that none of these factors justifies a special-factor enhancement. Def.'s Resp. 7-16.

In *Pierce v. Underwood*, 487 U.S. 552, 572 (1988), the Supreme Court clarified that the EAJA special factor exception for qualified attorneys "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." The Court noted, as an example of a special factor, expertise in "an identifiable practice speciality such as patent law." *Pierce*, 487 U.S. at 572. The Court then listed several factors that it deemed insufficient to merit an increase in the statutory cap: "[t]he 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained.'" *Id.* at 573 (internal citation omitted). The Court explained that these "are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.*

The court considers customs law to be a specialized practice area, distinct from general and administrative law, for purposes of EAJA. *See Nakamura v. Heinrich*, 17 CIT 119, 121 (1993). The court further concludes that plaintiff's attorneys possess distinct knowledge and litigation experience in the field of customs law. The law firm Neville Peterson LLP describes itself as "a law firm concentrating in international and domestic trade regulation matters." *See* Neville Peterson LLP, http://www.npwtradelaw.com (last visited Dec. 1, 2008). The biography of the lead billing partner in the Jazz litigation, Mr. Peterson, attests to expertise in international trade and customs topics. *Id.* Additionally, Mr. Peterson is a member of the Customs and International Trade Bar Association. *Id.* Defendant does not question the credentials and expertise of plaintiff's attorneys in customs law.

The court next considers whether specialized customs law skills were required for competent representation in the case. *See Pierce*, 487 U.S. at 572; *see also Libas, Ltd. v. United States*, 27 CIT 1193, 283 F. Supp. 2d 1327 (2003) (finding that attorney's knowledge of customs law was necessary to litigate case). The court concludes that plaintiff's attorneys' expertise in customs law warrants a special-factor enhancement because knowledge of customs law was critical to effective representation in litigating the issue of segregation. Plaintiff's counsel participated in an additional administrative proceeding directed to the segregation issue. Plaintiff argued successfully on appeal that the Court of International Trade was authorized to order expedited administrative proceedings and that Customs was obligated to supervise the importer's segregation of commingled goods stored in a bonded warehouse. The court accepts that the billing rates of plaintiff's attorneys are reasonable based on the customary compensation charged by other customs and international trade lawyers in other cases. *See* Affirmation ¶ 12. The court

calculates, later in this Opinion and Order, the value of the representation by plaintiff's counsel on the segregation issue. The court declines, however, to award a special factor for plaintiff's attorneys' representation on issues other than segregation. Plaintiff's argument that the case involved "numerous questions of patent infringement law," Pl.'s Reply 8, is generally correct; however, plaintiff has not submitted evidence demonstrating that the firm Neville Peterson LLP specializes in intellectual property law generally or patent law in particular, nor has it demonstrated that the billing attorneys in this case hold themselves out as specialists in these areas.

With the possible exception of plaintiff's request for a special-factor enhancement for preparing the trial and appeal in a relatively short time period, *see* Pl.'s Reply 8, the remaining justifications for special-factor enhancements that plaintiff advances were justifications rejected in *Pierce*. In support of its claimed special-factor enhancement for expedited trial and appellate preparation, plaintiff argues that "no other law firm or attorney would take on such an expedited trial." Pl.'s Reply 8. The shortage of lawyers who would take a particular case has been held to be inadequate to establish a "special factor" exception to the statutory rate. *See Hyatt v. Barnhart*, 315 F.3d 239, 249 (4th Cir. 2002). Plaintiff's argument is further undercut by its failure to substantiate the premise that no other firm or attorney was available to undertake the representation. *See Libas, Ltd.*, 27 CIT at 1198, 283 F. Supp. 2d at 1333 (where plaintiff submitted affidavits of attorneys from the Los Angeles area who stated that the customs bar was very small in the area). Moreover, plaintiff's rationale that the need to prepare for expedited trial and appeal satisfies the standard for a "special factor" increase might be viewed as akin to the "undesirability of the case" rationale that the Supreme Court found insufficient. *See Pierce*, 487

U.S. at 573; *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) ("*Pierce* made clear that an increase in the cap is justified only by work requiring specialized skills or knowledge beyond what lawyers use on a regular basis. Producing high-quality work on a short deadline hardly satisfies this standard.").

<u>B. The Court Allows an Adjustment for Cost of Living</u>

The court concludes that a cost-of-living increase is warranted. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). The court may exercise judicial discretion in granting cost-of-living adjustments so as to effectuate the intent of Congress "to provide adequate compensation notwithstanding inflation." *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992) (quoting *Sullivan v. Sullivan*, 958 F.2d 574, 578 (4th Cir. 1992) (internal quotation marks omitted)). Plaintiff correctly submits that the cost-of-living adjustment in this case may be calculated using the Consumer Price Index ("CPI-U"). *See Kerin v. U.S.P.S.*, 218 F.3d 185, 194 (2d Cir. 2000) ("[T]he district court may choose to apply a cost of living adjustment to [the statutory rate], as measured by the Consumer Price Index.").

The court calculates adjustments to EAJA fees using the CPI-U information available from the Bureau of Labor Statistics for the Northeast Urban Area pertaining to the periods in which the services were performed, which were the second half of 2004, the first half of 2005, and early 2006. *See Kerin*, 218 F.3d at 194 ("[T]he hourly rate . . . should only be increased by the corresponding Consumer Price Index for each year in which the legal work was performed." (internal citations omitted)). Although seeking reimbursement for at least four billing entries occurring in January and February of 2006, plaintiff does not identify a CPI-U rate for the year 2006 in its revised EAJA application. The court concludes that it is appropriate to calculate a

cost-of-living adjusted rate for the 2006 attorney billing hours because a portion of these billing

entries are allowed. To calculate the EAJA fee adjustment, the court makes an adjustment to the

$125 statutory EAJA amount. *See Allegheny Bradford Corp. v. United States*, 28 CIT 2107,

2114, 350 F. Supp. 2d 1332, 1339 (2004); 28 U.S.C. § 2412(d)(2)(A)(ii). The adjustment is as

follows: $125 per hour (the statutory amount for fees), multiplied by 201.7 for the year 2004;

205.3 for the year 2005; and 211 for January 2006[3] (the relevant years for the Northeast Urban

Area CPI-U), divided by 162.8 (the Northeast Urban CPI-U of March 1996).[4]

Accordingly, the adjusted EAJA fee rate for 2004 is $154.87 ($125 x 201.7/162.8). The

adjusted rate for 2005 is $157.63 ($125 x 205.3/162.8). The adjusted rate for 2006 is $162.01

($125 x 211/162.8). The court next considers the numbers of hours requested in the revised

EAJA application.

### C. The Court Reduces the EAJA Award to Avoid Improper Reimbursement

Plaintiff seeks reimbursement for 363.15 hours of legal services. Plaintiff has the burden

of establishing the reasonableness of its fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 437

---

[3] The calculated rate does not include February 2006 because, as discussed in Part C of this opinion, these billing entries are disallowed.

[4] The court uses the CPI-U data for March 1996 because the EAJA was amended, effective March 29, 1996, to increase the statutory cap on EAJA attorneys' fees from $75.00 per hour to $125.00 per hour. *See* 28 U.S.C. § 2412(d)(2)(A). Plaintiff's attorneys request the use of 155.6, rather than 162.8, as the CPI-U for March 1996. *See* Pl.'s Reply Mem. in Supp. of Its Application for an Award of Attorney's Fees Under the Equal Access to Justice Act ("Pl.'s Reply") 12. The number 155.6 represents the CPI-U for "All Urban Consumers, U.S. City Average, All Items." Yet plaintiff identifies the CPI-U for the "All Urban Consumers, Northeast Urban, All Items" for the second half of 2004 and the first half of 2005. *Id.* at 11. The more appropriate CPI-U for all years is one associated with the area where the service was performed, in this case the "All Urban Consumers, Northeast Urban, All Items" CPI-U. *See* Consumer Price Index–All Urban Consumers, http://www.bls.gov/cpi/cpi_dr.htm (last visited Dec. 1, 2008).

(1983). Defendant contends that plaintiff's EAJA claim for 363.15 hours is unreasonable and excessive because it includes attorneys' time and expenses for issues unrelated to the government's appeal in *Jazz III*. Def.'s Resp. 7. Defending its request, plaintiff argues that, where a litigant has substantially prevailed in its position, "to limit the award and reduce the fees according to specific issues would undermine the spirit of the EAJA." Pl.'s Reply 7.

The court disagrees that limiting an EAJA award according to specific issues would undermine the spirit of EAJA. Although the court may have discretion to do otherwise, the court concludes that the better result in this case is to avoid a result requiring the government to bear the expense of defending even its reasonable positions. *See Ellis v. United States*, 711 F.2d 1571, 1576 (Fed. Cir. 1983). *Jazz IV* held that the government pursued substantially unjustified positions on only two of the issues in the *Jazz III* appellate litigation, *i.e.*, whether the processing conducted on Jazz's imported merchandise constituted permissible repair and whether the Court of International Trade had authority to order expedited administrative proceedings to segregate merchandise.

Certain billing entries appear to be unrelated to the *Jazz III* litigation in the Court of Appeals on the two issues for which the court is allowing EAJA reimbursement. Some of these billing entries, corresponding to 7.6 hours, pertain to plaintiff's participation in the *Jazz I* litigation before the Court of Appeals.[5] Additionally, it is appropriate to reduce the EAJA award

---

[5] The entries in question are December 13, 2004 ("Numerous memos to client concerning status of Customs release of merchandise which was subject of CIT decision; memo to Mr. Kaplan concerning possible cross-appeal by Jazz"); December 28, 2004 ("Draft of Notice of Appeal"); January 3, 2005 ("Prepare and file cross-appeal in United States Court of Appeals for the Federal Circuit in respect of cameras made from 'Seven Bucks' shells"); January 4, 2005 ("Draft of motion to stay execution of judgment with respect to excluded cameras, call to Dept.

(continued...)

by the 16.5 hours billed by one of plaintiff's attorneys, Mr. Thompson, for legal services rendered from January 27, 2006 to February 8, 2006, inclusive.[6]  Plaintiff's billing record indicates that plaintiff presented oral argument in *Jazz III* on January 5, 2006.  *See* Revised Application, Ex. A at 10; *see also* Pl.'s Reply, Ex. A (case detail sheet for the Court of Appeals, calendaring oral argument for January 9, 2006).  There is no indication that plaintiff filed any brief following the oral argument in the *Jazz III* appellate litigation.  *See* Pl.'s Reply, Ex. A.  The court concludes, therefore, that the subject billing entries by Mr. Thompson should be deleted from any recovery under EAJA.  *See Hensley*, 461 U.S. at 434.

The government challenges 206.26 of the remaining 339.05 hours in plaintiff's revised EAJA application.  The billing entries for these hours do not segregate the amount of time plaintiff's attorneys spent in the *Jazz III* appellate litigation on the issues of permissible repair and merchandise segregation from the amount of time spent on the other issues involved in the *Jazz III* litigation.  The court recognizes that at the time of billing these entries, plaintiff's counsel was not aware of the future need to identify the specific time incurred in litigating each of those two

---

[5](...continued)
of Justice for consent"); January 5, 2005 ("Completion of draft motion to stay judgment for excluded cameras in first case.  Discussion with Dept. of Justice regarding consent for same, sent Notice of Appeal"); January 14, 2005 ("Secure and review order from Court of International Trade staying judgment requiring Jazz to export 'Seven Bucks' cameras pending appeal; letter to Messrs. Sirota and Benun concerning same").  *See* Revised Application for Fees and Other Expenses Pursuant to the Equal Access to Justice Act 28 U.S.C. § 2412(d), Title II of Public Law 96-481, 94 Stat. 2325 and Rule 54.1 ("Revised Application"), Ex. A 6-7.

[6] These entries are listed for January 27, 2006 ("Attend meeting in NY office w/ Messrs Cone and Aiyer re issues to address in Federal Circuit appeal brief"); February 5, 2006 ("Review and revise first draft of Federal Circuit appeal brief"); February 8, 2006 ("Draft and revise brief in Federal Circuit appeal arising from ITC enforcement proceeding"); and an undated entry ("Draft, revise and file brief in Federal Circuit appeal").  *Id.*, Ex. A at 10.

issues.  *See* Pl.'s Reply 9.  However, the court considers an adjustment appropriate so that plaintiff does not recover under EAJA legal fees for issues on which the government's litigating position was substantially justified.

In determining plaintiff's EAJA award, the court is guided by the Supreme Court's holding in *Hensley* on an analogous issue.  *Hensley* held that EAJA awards should not be reduced according to a mathematical ratio comparing the number of issues upon which the plaintiff actually prevailed with the total number of issues in the case.  *See Hensley*, 461 U.S. at 435-36, n.11.  Although this case presents a different issue, *Hensley* is nevertheless instructive on the general question of how EAJA awards should be allocated between litigated issues.  Further, while defendant requests that "the ratio of the number of pages in Jazz's appellate brief devoted to each of the issues be used as a means of measurement," Def.'s Resp. 13, the Court of Appeals held in *Naekel v. Department of Transportation*, 884 F.2d 1378, 1379-80 (Fed. Cir. 1989), that trial courts may not reduce awards by a fraction corresponding to the number of briefing pages devoted to successful versus unsuccessful issues, because the "count of pages" argument does not necessarily indicate the significance of the issue.

1.  Reduction of Attorney Hours for Litigation Opposing Fuji Photo Film Co., Ltd.

Plaintiff's revised statement includes the hours plaintiff's counsel billed that resulted from opposing the positions in the *Jazz III* appellate litigation that were taken by Fuji Photo Film Co., Ltd. ("Fuji").  The government alleges that approximately 130.60 hours of attorney time requested in Jazz's revised application related to Jazz's opposing motions filed by Fuji on which the government either took no position or opposed Fuji's positions.  Def.'s Resp. 9.  Plaintiff contends that attorney representation on matters concerning Fuji were properly included in its fee

application because the government worked together with Fuji to overturn the court's decision and failed to take a position separate from Fuji at the appellate level.  Pl.'s Reply 10.  Plaintiff also argues that permitting it to recover fees for litigation opposing Fuji is appropriate because the government and Fuji shared oral argument time during the appeal, the government consolidated its appeal with Fuji, and the government took no position on frivolous motions asserted by Fuji. *Id.*

It is inappropriate to award attorneys' fees against the government for those phases of litigation in which the claimant was opposed solely by third parties.  *See Judicial Watch, Inc. v. United States Dep't of Commerce*, 470 F.3d 363, 373 (D.C. Cir. 2006) (providing instructive reasoning on EAJA with regard to claimant's litigation disputes with third parties); *see also Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) (applying EAJA and concluding that "where plaintiffs are litigating an issue and are opposed only by private defendants, a fee award against the government would be 'manifestly unfair and contrary to historic fee-shifting principles.'" (quoting *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 636 (5th Cir. 1986)).  The court determines that the position taken by the government with regard to Fuji at the appellate level was not in opposition to plaintiff.

The *Jazz III* litigation involving Fuji before the Court of Appeals centered on the issues of intervention and joinder.  The government maintained before the Court of Appeals that Fuji's intervention was barred by "the plain language of 19 U.S.C. § 2631(j)" and that Fuji did not qualify as a necessary party to the proceeding.  Br. of Def.-Appellant United States 25, n.2.  Although the government did not take a position on the issue of joinder, the Court of Appeals noted that the government and Jazz were aligned on the position that Fuji was barred from

intervention by the express language of 28 U.S.C. § 2631(j)(1)(A).  *See Jazz III*, 439 F.3d at 1357;

*see also* Br. of Def.-Appellant United States 25, n.2.  The Court of Appeals concluded that where

a party is statutorily prohibited from intervening in a proceeding, the party cannot be considered a

necessary party to that proceeding for purposes of joinder.  *Jazz III*, 439 F.3d at 1357.

On appeal, Fuji also argued that its outside counsel should have been granted access to

confidential documents under the protective order entered into under USCIT Rule 26(c).  *See id*.

at 1357-58.  The protective order was intended to protect Jazz's commercial information.  Fuji

was denied access to this information because it was not a party to the case.  The government did

not object to Fuji's gaining access to confidential documents, either at trial or on appeal.  Br. of

Def.-Appellant United States 25, n.2.

The primary purpose of EAJA is to eliminate legal expense as a barrier to challenges of

"unreasonable government action."  *See Ellis*, 711 F.2d. at 1576.  Because EAJA contemplates

deterring only unreasonable positions taken by the government, the court agrees with the

reasoning in *Judicial Watch, Inc.* and *Love* and concludes that it is improper to grant an EAJA

award where a non-governmental party litigated the issue and the government took no position.

*See Love*, 924 F.2d at 1496 (holding that the government should be liable only for fees related to

third parties insofar as they "were incurred in opposing government resistence").  Fuji was not

represented by the government and brought its own appeal, in which it disputed the Court of

International Trade's rulings on standing and access to certain Jazz proprietary information.  The

litigation issues involving Fuji were neither initiated nor pursued by the government, Fuji was a

third party that was not within the government's control or authority, and the litigation dispute

between Fuji and Jazz did not relate to the two issues for which the court is permitting plaintiff's EAJA recovery.  Accordingly, plaintiff's revised EAJA application must be reduced to exclude attorneys' fees for representation opposing Fuji.

The court deducts 111.61 hours from plaintiff's revised EAJA application to reflect time spent on litigation against Fuji, as challenged by defendant in its Exhibit A.  *See* Def.'s Resp., Ex. A.  In arriving at this figure, the court disallowed recovery for certain billing entries, agreeing with defendant that these are "billing entries describing attorney work and hours spent on responses to Fuji filings." *See id.*  For a limited number of the contested entries, where the billing descriptions indicated that, in addition to Fuji matters, plaintiff's counsel represented Jazz on an issue for which EAJA recovery is permitted, the court deducted ten percent of the attorneys' hours.  The court estimates that a ten percent reduction to these particular entries is appropriate because the issues involving Fuji were not major issues on appeal, were not particularly complex, and could be resolved through basic statutory interpretation with only limited analysis of precedent.

2.  Additional Reduction of Attorney Hours for Appellate Litigation on Issues Related to Fuji and Reduction of Attorney Hours for Appellate Litigation on the "First Sale" Issue

The government identifies 97.25 hours in plaintiff's revised EAJA statement that it contends are not properly segregated among the issues for which recovery is permitted.  The government requests that the court deduct 75.66 of the 97.25 hours to account for time spent by plaintiff on issues for which recovery is not permitted, *i.e.*, those related to Fuji and the "first sale" issue.  The court deducts from the 97.25 hours an amount to reflect billing on the issue of first sale and the issues involving Fuji.  Below, the court discusses its method of calculating this deduction.

The first sale issue, on which the government's litigation position in *Jazz III* was held in *Jazz IV* to be substantially justified, involved two questions, degree of burden of proof and application of a presumption of regularity, that were issues of first impression. *See Jazz IV*, 31 CIT at __, 502 F. Supp. 2d. at 1286. Considered as a whole, the resolution of the first sale issue by the Court of Appeals was a matter of some complexity. *See Jazz III*, 439 F.3d at 1350-53. Because it cannot identify the specific time entries for legal representation provided in contesting the government's positions on the first sale issue, the court is basing its fee reduction on its understanding gained by presiding over the pre-trial, trial, and post-trial proceedings in *Jazz II* and on its general familiarity with the issues of first sale, permissible repair, and segregation. The court estimates that the issues of first sale and permissible repair each accounted for forty percent of plaintiff's appellate representation in *Jazz III*. The court values the less complicated issues involving Fuji and the issue of segregation to each represent ten percent of plaintiff's appellate representation, for a total of twenty percent. On this basis, the court makes a deduction of 48.63 hours, which is fifty percent of the total of 97.25 hours.

In sum, the court is deducting a total of 160.24 hours from plaintiff's revised EAJA application to address the inclusion in plaintiff's billing submissions of hours for litigation with Fuji and for litigating the issue of first sale.[7]

### 3. Calculation of Plaintiff's EAJA Award

The court will award plaintiff reimbursement for 178.81 hours of attorneys' time incurred in litigating the *Jazz III* matter before the Court of Appeals. The court determines that the issue of

---

[7] The court makes no deduction for the 111.20 hours in plaintiff's billing statement that were not challenged by the government.

segregation, for which the special enhancement factor is permitted, accounted for twenty percent of the 178.81 hours of appellate representation for which the court is allowing reimbursement, or approximately 35.76 hours. The court will allocate attorneys' fees for this issue on a pro-rata basis. To calculate the appropriate attorneys' fees, the court will credit each of the five billing attorneys for their representation on the issue of segregation based on their overall percentage of hours billed on this case.[8] In total, plaintiff is awarded $12,061.35 for representation on the issue of segregation.

For the remaining 143.05 hours, the court calculates the total amount of reimbursable attorneys' fees as $22,289.16. This amount includes $14,920.80 for 2004, $7,154.51 for 2005, and $213.85 for 2006. In sum, plaintiff is awarded $34,350.51 in attorneys' fees for the issues of permissible repair and segregation.

---

[8] The court begins its calculation by deducting from the base attorneys' hours the billing entries pertaining to plaintiff's participation in the *Jazz I* litigation before the Court of Appeals and to unrelated legal services rendered by Mr. Thompson. In addition, although plaintiff alleges that Maria E. Celis billed 45.1 hours and Catherine Chess Chen 36.5 hours, based on the attorneys' billing statements attached to plaintiff's affirmation, the correct calculation is 44.9 hours and 36.1 hours, respectively. *See* Affirmation ¶ 13. Accordingly, the court calculates the billing of: Mr. Peterson (a total of 121.85 hours) to account for thirty-six percent, or 12.85 hours, of the billed hours on the issue of segregation, amounting to $5,782.50 in attorneys' fees; Mr. Thompson (a total of 18.6 hours) to account for five percent, or 1.96 hours, of the billed hours on the issue of segregation, amounting to $754.60 in attorneys' fees; Mr. Knauss (a total of 117.6 hours) to account for thirty-five percent, or 12.40 hours, of the billed hours on the issue of segregation, amounting to $3,410.00 in attorneys' fees; Ms. Celis (a total of 44.9 hours) to account for thirteen percent, or 4.74 hours, of the billed hours on the issue of segregation, amounting to $1,066.50 in attorneys' fees; and Ms. Chen (a total of 36.1 hours) to account for eleven percent, or 3.81 hours, of the billed hours on the issue of segregation, amounting to $1,047.75 in attorneys' fees.

### 4.  Reduction for Inappropriate Expenses

Plaintiff also requests compensation of $9,297.31 for disbursements.  Affirmation ¶ 17.

EAJA permits reimbursement for "fees and other expenses."  *See* 28 U.S.C.

§ 2412(d)(1)(A)(2)(A) (setting forth a list of examples of permissible expenses).  The Court of

Appeals has held that "[w]e interpret 28 U.S.C. § 2412 to mean that the trial court . . . may award

only those reasonable and necessary expenses of an attorney incurred or paid in preparation for

trial . . . , which expenses are those customarily charged to the client where the case is tried."

*Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (footnote omitted).  The plaintiff in

*Oliveira* sought to recover expenses for photocopying, printing and binding briefs, telephone,

postage, and overnight delivery services.  *Id.*  Although the Court of Appeals did not decide

whether the plaintiff could recover the expenses claimed, it cited with approval a Ninth Circuit

opinion that awarded telephone, postage, air courier, and attorney travel expenses under

§ 2412(b).  *See id.* at 744 & n.27 (citing *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767

(9th Cir. 1985)).  Based on *Oliveira*, the terms "fees and other expenses" in § 2412(d)(1)(A)

should be interpreted broadly enough to include the specific categories of expenses claimed by the

plaintiff in its revised EAJA application.  *See, e.g.*, *Filtration Dev. Co. v. United States*, 63 Fed.

Cl. 612, 626 (Fed. Cl. 2005).

Plaintiff identifies the basis of its expenses as follows: taxi ($30.00), travel ($64.43),

postage ($112.31), court fee ($150.00), fax ($178.00), messenger ($215.69), miscellaneous

($588.82), photocopies ($1,138.20), express courier ($352.00), phone charges ($2,100.36), and

computerized research ($4,367.50).  Affirmation, Ex. A.  Defendant argues that, due to plaintiff's

failure to attach to its revised application documentation substantiating its expenses, the court

must deduct all requested expenses from plaintiff's revised application. Def.'s Resp. 15-16

(citing *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 405 (Fed. Cir. 1987)). In

*Naporano*, the plaintiff submitted a billing statement that included a request for disbursements but

did not itemize the disbursements to identify specific expenses, *i.e.*, an amount for photocopies,

telephone bills, etc. *Naporano*, 825 F.2d at 404. Unlike the plaintiff in *Naporano*, Jazz has

identified expenses in its revised application with sufficient specificity to allow the court to

determine whether these expenses are reasonable. An exception is the amount requested for

miscellaneous expenses, which the court is disallowing because it cannot make a reasonableness

determination. Based on the percentages discussed previously, the court also deducts 50% of the

remainder to reflect estimated expenses relating to representation opposing Fuji's position and

representation on the issue of first sale. Accordingly, the court awards plaintiff $4,354.25 for

disbursements in its revised EAJA application.

### III. CONCLUSION AND ORDER

Based on the foregoing discussion, the court concludes that plaintiff's Revised Application

for an Award of Attorney Fees Under the Equal Access to Justice Act should be granted in part

and denied in part. Plaintiff is awarded reimbursement for $34,350.51 of attorneys' fees and

$4,354.25 for identified expenses. Accordingly, it is hereby

**ORDERED** that defendant shall pay to plaintiff $38,704.76 in reimbursement under

EAJA for attorneys' fees and disbursements.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: December 2, 2008
New York, New York